GULF, COLORADO & SANTA FE RAILWAY COMPANY V. STATE OF TEXAS.

Decided June 9, 1909.

ON MOTION FOR REHEARING.

**1.—Carriers—Providing Cars—Common Law.**

At common law shippers could not require initial carriers to provide them with cars to be transported, when loaded with freight, to a point beyond the line of the initial carrier; the carrier's obligation to provide equipment was always limited to service over its own road.

**2.—Same—Statute—Railroad Commission.**

Under the provisions of neither article 4574, Rev. Stats. nor of the order of the Railroad Commission of the State, known as Circular No. 199, can a railroad company be required to furnish cars for the transportation of freight beyond its own line when to do so would impair its equipment and render the company unable to discharge its duty to the public in carrying freight tendered it for transportation over its own line.

Error from the District Court of Bosque County. Tried below before Hon. O. L. Lockett.

*Terry, Cavin & Mills* and *Chas. K. Lee,* for plaintiff in error.— The Legislature of this State had no authority itself, and had no power to delegate to the Railroad Commission of this State, and the Railroad Commission of this State had no authority, under the Constitution of this State and of the United States, to require defendant in this case or any other carrier to turn its cars over to another connecting line or to require it to allow its cars to go out of its own control and beyond its own line. Any such requirement is in contravention of the fifth and fourteenth amendments to the Constitution of the United States providing that no man's property shall be taken without due process of law, and that no State shall deny to any person within its jurisdiction equal protection of the laws, and in contravention of section 17, article 1, of the State Constitution, providing that no person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made, unless by the consent of such person, and to article 19 of the State Constitution providing that no citizen of this State shall be deprived of his life, liberty, property, privileges or immunities except by due course of the law of the land. Any such requirement on the part of the State or on the part of the Railroad Commission is tantamount to the State taking possession of the property of the defendant and taking it out of its control and depriving defendant of its right to control its own property, and the State has no right under the Constitution of this State or of the United States to exercise any such power. Therefore, even if article 4574, Revised Statutes, and Circular No. 199 of the Railroad Commission is susceptible of the construction placed upon it by the trial court, they are both unconstitutional and void. Central Stock Yards Co. v. L. & N. Ry. Co. (U. S. Supreme Ct.), 192 U. S., 568, L. C. P.

Ed., vol. 48, p. 565; Houston & T. C. Ry. Co. v. Buchanan, 15 Texas Ct. Rep., 522; Texas & P. v. Loving, 17 Texas Ct. Rep., 151; Allen v. Texas & P. Ry. Co., 18 Texas Ct. Rep., 231.

*R. V. Davidson,* Attorney-General, and *James D. Walthall,* Assistant Attorney-General, for the State of Texas.—Neither circular No. 199, promulgated by the Railroad Commission, nor article 4574 of the Revised Statutes of this State, is invalid as being in violation of either the Constitution of this State or of the United States.

NEILL, ASSOCIATE JUSTICE.—This action was brought by the State, hereinafter called plaintiff, against the Gulf, Colorado & Santa Fe Railway Company, alleged to be a railroad organized and existing under the laws of the State of Texas, which is hereinafter called defendant, to recover $5000 as a penalty under article 4579, Rev. Stats. of 1895, for an alleged failure and refusal of the defendant to comply with an order of the Railroad Commission of this State, known as Circular No. 199. Upon a trial before the court, without a jury, judgment was rendered against the defendant in the sum of $500 for violating said order. It has appealed from the judgment.

The trial court filed conclusions of fact and of law in the case. And as its conclusions of fact are supported by the evidence and are not complained of, we adopt its findings of fact, which we herein copy; and as the trial court's conclusions of law are assailed by the assignments of error, we will also copy them. Such findings of fact and law are as follows:

*"Conclusions of Fact.*—1. I find that the Railroad Commission of the State of Texas, on January 6, 1896, made an order, and made and issued Circular No. 199, as set forth in the plaintiff's original petition, to the effect and in the terms in said petition set forth, same having been made after due notice under the law to all parties interested, said order being known as Circular No. 199, and is as follows, to wit:

" 'Office of Railroad Commission of Texas. Circular No. 199, General Order. Austin, Texas, January 6, 1896. It is ordered by the Railroad Commission of Texas that the following rules and regulations shall be and they are hereby established to govern in the reception, transportation and delivery of loaded cars from point to point on railroads within the State of Texas.

" '1. Every railroad company operating a railroad between points within the State of Texas shall receive, when tendered to it by a shipper at a station on its line, every loaded car intended for transportation over its line to a point on its line, also every loaded car intended for transportation over its line, and thence to a point on any connecting line of railroad. Having received from a shipper a loaded car destined to a point on its line, the company so receiving such loaded car shall forward and haul the same over its line to destination; and having received from a shipper a loaded car destined to a point on a connecting line, the company so receiving such loaded car shall forward and haul same over its line to

its junction with the next connecting line, to which it shall at such junction deliver same for further transportation.

"2. Every railroad company operating a railroad between points within the State of Texas shall receive, when tendered to it by a connection at a place of junction of their tracks, every loaded car intended for transportation over its line to a point on its line and also every loaded car intended for transportation over its line, and thence to a point on any connecting line. Having received from a connection a loaded car destined to a point on its line the company so receiving such loaded car shall forward and haul same over its line to destination; and having received from a connection a loaded car destined to a point on any connecting line, the company so receiving such loaded car shall forward and haul same over its line to its junction with the next connection line, to which it shall deliver same for further transportation.

"3. Connecting lines, as used in this circular, are two or more lines connecting with each other by crossing each other's track or otherwise and forming a continuous rail route between the initial and terminal point of shipment, and a connection or connecting line is any one of said two or more lines.

"4. The junction of two railroads, as used in this circular, is the place at which they cross each other's tracks or otherwise connect.

"5. Nothing herein contained shall affect the rules and regulations now recognized and enforced by the railroad companies of this State in respect to charges for car mileage upon loaded or empty cars.

"This order shall take effect January 27, 1896.

"'John H. Reagan, Chairman,
"'L. J. Storey,
"'N. A. Steadman,
"'Commissioners.

"'Attest: J. J. Arthur, Secretary.'

"2. That thereafter upon complaint being made by the Lumpkin Flour Mill of Meridian, Bosque County, Texas, the said Railroad Commission of Texas, on January 4, 1907, gave and issued its special notice to defendant of a hearing as to said complaint, which said special notice is as follows:

"'January 4, 1907.

"'Special Notice:

"'It is ordered that notice be and the same is hereby given to the Gulf, Colorado & Santa Fe Railway Company, and all other parties interested, that the Railroad Commission of Texas will on Tuesday, January 22, 1907, at its office in the Capitol, at Austin, take up and consider the matter of a complaint filed with this Commission, under the date of January 1, 1907, by the Lumpkin Flour Mills of Meridian, Texas, said complaint containing allegations as follows:

"'That on November 28, 1906, said complainant delivered to the defendant railway company a shipment of mill stuff at its station of

Meridian, said shipment being loaded in A. T. car 24197, and being consigned to G. W. Dunlap, at Millican, Texas, a station on the line of railway of the Houston & Texas Central Railroad Company, the said defendant railway company accepted said shipment, signed bill of lading therefor, and transported said loaded car to Navasota, Texas, the junction of its line of railroad with the line of the Houston & Texas Central Railroad, where said defendant railway company failed and refused to deliver said loaded car to the Houston & Texas Central Railroad Company for further transportation to the destination named in the bill of lading.

" 'And it appearing to this Commission that the said failure and refusal on the part of the defendant railway company to so deliver said loaded car to its connection for further transportation is in direct violation of an order heretofore entered by this Commission, to wit: Circular No. 199, effective January 27, 1896, this Commission will, at said hearing, consider the matter of a proposed order directing the Attorney-General of Texas to institute and prosecute in a court of competent jurisdiction all necessary suit or suits against the Gulf, Colorado & Santa Fe Railway Company for the collection of penalties provided by law for the violation of and noncompliance with orders of this Commission.

" 'All parties interested in the matters above set forth are requested to present to the Commission on the date of said hearing all facts within their knowledge pertaining thereto, and said Gulf, Colorado & Santa Fe Railway Company will show cause, if any it can, why the order and direction to the Attorney-General of Texas, as above set forth, should not be made.

" 'L. J. Storey, Chairman,<br>
" 'Allison Mayfield,<br>
" 'O. B. Colquitt,<br>
" 'Commissioners.

" 'Attest: E. R. McLean, Secretary.'

"3. That on such hearing the said Railroad Commission of Texas made its order and findings, which I find to be true, as follows:

" 'Office of Railroad Commission of Texas.
" 'Austin, Texas, March 2, 1907.
" 'Hearing No. 693.
" 'The State of Texas ex rel.
" 'The Lumpkin Flour Mills v.
" 'G., C. & S. F. Ry. Co. Loaded Cars.
" 'Refusal to Deliver to Connections:

" 'The above numbered and entitled cause having been called for trial by the Commission at its January term, 1907, and the Commission having heard the evidence offered and statements of parties interested, and having now duly considered the same;

" 'And it appearing to the Commission from the facts developed upon the hearing of this cause, that on November 28, 1906, the complainant, the Lumpkin Flour Mills, delivered to the defendant railway company a shipment of mill stuff at its station at Meridian, said

shipment being loaded in A. T. car No. 24197, and being consigned to G. W. Dunlap, at Millican, Texas, a station on the line of railroad of the Houston & Texas Central Railroad Company, that said defendant railway company accepted said shipment, signed and delivered to consignor a bill of lading therefor and transported said loaded car to Navasota, Texas, the junction of its line of railroad with the line of railroad of the Houston & Texas Central Railroad Company and at said junction of Navasota said defendant railway company failed and refused to deliver said loaded car to the said Houston & Texas Central Railroad Company for further transportation to the destination named in the bill of lading.

" 'And it further appearing to the Commission that said failure and refusal on the part of the defendant railway company to so deliver said loaded car to its connection for further transportation is in direct violation of the terms and provisions of an order heretofore entered by this Commission, to wit: Circular No. 199, effective January 27, 1896, which said failure and refusal on the part of the defendant railway company to comply with and be governed by the terms of said Circular No. 199 is a violation by said railway company of laws, and subjects said company to the penalties prescribed by law to be recovered by the State of Texas for failure by railway companies to comply with and be governed by the terms of the orders of this Commission;

" 'It is therefore hereby ordered by the Railroad Commission of Texas, that the Attorney-General of Texas be and he is hereby directed and instructed to institute and prosecute in a court of competent jurisdiction, all necessary legal proceedings against said Gulf, Colorado & Santa Fe Railway Company for the recovery by the State of Texas of the penalties above referred to.

" 'It is further ordered that all papers in this cause, together with all documentary evidence before the Commission pertaining thereto, be and are hereby referred to the Attorney-General for his use and assistance in the prosecution of the legal proceedings hereby ordered to be instituted and prosecuted by him.

" 'Allison   Mayfield,   Chairman,
" 'L.   J.   Storey,
" 'O.   B.   Colquitt,
" 'Commissioners.

" 'Attest: E. R. McLean, Secretary.'

"4.  I further find that the Lumpkin Flour Mills in November, 1906, made a demand on the defendant, G., C. & S. F. Ry. Co., for a car in which to load and ship mill stuff from Meridian on defendant's line to Millican on the line of the Houston & Texas Central Railway Company, and thereafter tendered to defendant a carload of mill stuff loaded in car A. T. No. 24197. That the first demand for said car was made in the form of a written statutory demand under articles 4497, 4498, 4499 and 4500 of the Revised Statutes of Texas, and the amendments thereof.

"5.    That at the time the first demand for the car was made, the defendant notified Lumpkin Flour Mill that it would furnish a car

to go to the end of its line, in this instance Navasota, for the intended shipment, the shipment there to be delivered to any consignee that might be named by the shipper or to go to the next connecting line, but it would not permit its car to go beyond its own line, and that when the shipper began loading of the car, and also when the car as loaded was tendered for shipment the defendant likewise and again advised the shipper that the freight would only be accepted to go to the junction point of the Houston & Texas Central Railroad Company, to wit, Navasota, and that the car would not be allowed to go beyond the defendant's own line at Navasota, Texas.

"6. That the defendant received the shipment and issued its bill of lading therefor, which was a through bill of lading from Meridian, Texas, to Millican, Texas, and shows the shipment to have been full carload of flour, bran and chops, and the freight charges, therefor for the full distance of Meridian to Millican was prepaid, and that it was loaded in A. T. car No. 24197. The defendant's local agent at Meridian endorsed on said bill of lading, 'Car to go to jct. only,' by which was meant that the car was to go to the junction only.

"7. That the defendant never agreed to allow the car to go beyond its own line, and the shipper never consented that the car should be stopped at the junction point, Navasota, but the shipper tendered the shipment as a through shipment from Meridian, Texas, to Millican, Texas, and insisted on its transportation thereto. The freight charges were paid by the shipper at Meridian clear through to Millican, and these charges were paid to defendant at the time of delivery of the shipment. It has for years been the custom among railroads to collect freight for the entire journey over one or more lines, either at the point of shipment or at the point of destination, and the shipper in this instance had the option of paying full amount of the freight at Meridian or Millican.

"8. Upon the arrival of said car at Navasota, the defendant notified the Houston & Texas Central Railroad Company of the arrival of said car and shipment and called on it to furnish a car into which the shipment might be transferred and agreed to make the transfer at its own expense, and held itself willing and ready to transfer said shipment if said Houston & Texas Central Railroad Company would furnish a car to put it in, but said Houston & Texas Central Railroad Company declined and refused to furnish a car to put the shipment in. That defendant was willing and ready to deliver the contents of said car at its depot at Navasota, or from its car to any shipper or consignee or to its connecting line, the Houston & Texas Central Railroad Company, but was not willing to turn over its car to the Houston & Texas Central Railroad Company and let the shipment go forward in the car to destination on the line of that railroad.

"9. That the said car was the property of the defendant.

"10. That at the time of the tender of said car to the defendant and at the time of the requisition and demand therefor, and at all times the said car was at Navasota in the custody of defendant, there was a very great and unusual amount of traffic moving over the lines of the railroads in Texas and of this defendant, and defendant did not have cars enough to move the traffic offering on its own

line promptly, and did not have cars enough to furnish on statutory demands and on demands on it under the common law and its obligations as a carrier to shippers having freight to tender and to be moved over defendant's own road.

"11. That the Railroad Commission had heretofore fixed a through rate for freight of the character in question from Meridian to Millican, and under the provisions and requirements of law the defendant had agreed with the Houston & Texas Central Railway Company on what proportion of such rates the defendant should have for the haul on its own lines, but this agreement and the rate so provided did not make any provision as to cars of one company passing to another.

"12. That had the defendant allowed its cars to go to the Houston & Texas Central Railway it would have passed beyond its control, and defendant could not have controlled the time when it could get the car back and would have been deprived of the use of the car during all of the time it was off of its line and until the Houston & Texas Central Railway should have returned it to defendant.

"13. That defendant in the handling of the shipment in this case accorded to the shipper the same privilege it accorded to all other shippers under like circumstances, and the State does not claim any discrimination in this case except for the refusal of the defendant to allow its car to go beyond its own line contrary to the order of the Railroad Commission as pleaded and contrary to the provisions of article 4574, Revised Statutes.

"14. That the shipment in question was an intrastate shipment from Meridian, Texas, to Millican, Texas; that the junction point of the defendant's line en route to Millican with the Houston & Texas Central Railway Company is Navasota, Texas, the defendant not having a line of road clear through from Meridian to Millican, the distance from Meridian to Navasota is 168 miles and the distance from Navasota to Millican is ten miles.

"15. That said car and its contents arrived at Navasota about December 1, 1906, and remained there in the custody and possession of the defendant until January 3, 1907, when it was delivered with the contents therein, by the defendant to the Houston & Texas Central Railway Company for transportation to destination, Millican. That repeated efforts had been made by the defendant to get a car from the Houston & Texas Central Railway on which to load the said freight, but without success, and defendant had declined to let the car go forward that it might hold it on its own line so as to have it in its possession and be able to use it when it could get disposition of the load, the shipment in question, but being unable to get a car from the Houston & Texas Central Railway Company or to effect delivery of the shipment to that company, and as it was being kept out of the use of its car, it finally allowed the car to go forward. That the character of the shipment in question, being mill stuff, was such that it could not be unloaded into defendant's warehouse at Navasota without danger of serious injury from rats and mice and it was a character of shipment that defendant did not

unload and hold in its warehouse for fear of damages and loss to the shipment."

"*Conclusions of Law.*—From the above and foregoing conclusions of fact which I find to be true, I conclude, as a matter of law, that the defendant was required under the order of the Railroad Commission, known as Circular No. 199, and also under article 4574 of Revised Statutes, to deliver the loaded car to the Houston & Texas Central Railroad Company at the junction point, Navasota, and having failed and refused to do so for more than a month, such refusal was wilful and without authority of law. I also conclude that the Railroad Commission had authority to make and promulgate the Circular No. 199 and that the article 4574 of the Revised Statutes is valid and constitutional. I also conclude that although the defendant's local agent at Meridian endorsed on the bill of lading that the car was to go to the junction only, yet the shipper did not agree to this and was compelled to accept the bill of lading with this endorsement in order to get his mill stuff shipped and therefore he is not bound thereby.

"Finding that the acts of the defendant as aforesaid is in direct violation of the said order of the Railroad Commission as well as the statute, I render judgment for the State for a penalty of $500."

The first assignment of error assails the conclusion of the trial court that defendant was required under the order of the Railroad Commission, known as Circular No. 199, and also under article 4574, Revised Statutes, to deliver the loaded car to the Houston & Texas Central Railroad Company at the junction point, Navasota.

The propositions asserted under the assignment are:

"(1) Both article 4574, Revised Statutes, and Commission Circular No. 199 only requires that a railroad company shall deliver loaded cars when tendered to it at junction points to the next connecting carrier. Neither the statute nor the order of the Commission requires a railroad company to provide for a shipper cars to be loaded and then delivered to a connecting carrier. In other words, the only requirement either of the statute or of the order of the Commission is that when a shipper tenders a loaded car, to wit: his own car or a car which he has a right, as against the carrier, to control, loaded with his own goods, that then such carrier shall deliver such loaded car to the next connecting carrier. Both the Legislature and the Commission have a right to require this much of a carrier, but neither has a right, under constitutional guarantees, to require a railroad company to provide for a shipper its own car to be loaded to go beyond the line of its own railroad. The courts will, if possible, give that construction to the statute and to the order of the Railroad Commission, which brings them within the law, and not give it a construction that will make the terms of the statute or order exceed the powers of the Legislature and of the Commission."

"(2) Article 4574, Revised Statutes, being an article to define unjust discrimination, provides only that a railroad company shall deliver cars, loaded or empty, destined to points on the line of connecting railroads without delay or discrimination, and it is clear that the

only wrong intended to be remedied by the Legislature was the prevention of discrimination by carriers in the matter of allowing cars to go forward beyond its own line, and that it was not the intention of the Legislature to require a carrier to furnish to a particular connecting line cars in which to transport shipments unless it was in the habit of furnishing to other connecting carriers, under similar conditions, cars for a similar purpose. It being expressly agreed in this case, and the fact being so found by the court, 'that the defendant in the handling of the shipment in this case accorded to the shipper the the same privilege it accorded to all other shippers under like circumstances,' there was no discrimination within the meaning of article 4574, Revised Statutes."

"(3) The Legislature of this State had no authority itself, and had no power to delegate to the Railroad Commission of this State, and the Railroad Commission of this State had no authority under the Constitution of this State and of the United States to require defendant in this case or any other carrier to turn its cars over to another connecting line or to require it to allow its cars to go out of its own control and beyond its own line. Any such requirement is in contravention of the fifth and fourteenth amendments to the Constitution of the United States providing that no man's property shall be taken without due process of law, and that no State shall deny to any person within its jurisdiction equal protection of the laws; and in contravention of section 17, article 1, of the State Constitution, providing that no person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made, unless by the consent of such person; and of article 19 of the State Constitution providing that no citizen of this State shall be deprived of his life, liberty, property, privileges or immunities except by due course of the law of the land. Any such requirement on the part of the State or on the part of the Railroad Commission is tantamount to the State taking possession of the property of the defendant and taking it out of its control and depriving defendant of its right to control its own property, and the State has no right under the Constitution of this State or of the United States to exercise any such power. Therefore, even if article 4574, Revised Statutes, and Circular No. 199 of the Railroad Commission is susceptible of the construction placed upon it by the trial court, they are both unconstitutional and void."

The gist, as well as the crux, of the first proposition is that neither the Legislature nor the Railroad Commission has a right, as against constitutional guarantees, to require a railroad to provide for a shipper its own car to be loaded and go beyond the line of its own railroad.

The constitutional provisions under which the defendant seeks shelter from such exactions are: (1) those clauses of the fifth amendment to the Federal Constitution which declare that no person shall be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation; (2) that part of section 1 of the fourteenth amendment of the Constitution of the United States which inhibits any State

from depriving any person of life, liberty or property without due process of law, and from denying to any person within its jurisdiction the equal protection of the laws; (3) that part of section 17 of article 1 of the State Constitution which provides that no person's property shall be taken for or applied to public use without adequate compensation being made; and (4) that part of section 13 of the same article which declares that every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law.

Article 4562, Rev. Stats. of 1895, vests in the Railroad Commission of Texas the power, and makes it its duty, to adopt all necessary rates, charges and regulations to govern and regulate railroad freight and passenger traffic, the power to correct abuses and prevent unjust discrimination and extortion in rates and freight and passenger tariffs on different railroads in this State, and to enforce the same by having the penalties inflicted, as by the Railroad Commission Act prescribed, through the ·proper courts having jurisdiction. Subdivision 5 of article 4562, Rev. Stats., vests the Commission with power and makes it its duty to fix and establish for all or any connecting lines of railroad in this State reasonable joint rates of freight charges for the various classes of freight and cars that may pass over two or more lines of such railroads. And subdivision 2 of article 4574 provides that "Every railroad company which shall fail or refuse, under such regulations as may be prescribed by the Commission, to receive and transport without delay or discrimination the passengers, tonnage and cars, loaded or empty, of any connecting line of railroad, and every railroad which shall, under such regulations as may be prescribed by the Commission, fail or refuse to transport and deliver without delay or discrimination any passengers, tonnage or cars, loaded or empty, destined to any point on or over the line of any connecting line of railroad, shall be .deemed guilty of. unjust discrimination; provided, perishable freights of all kinds and live stock shall have precedence of shipment." Section 4 of the same article provides that any railroad company violating any provision of the article shall be deemed guilty of unjust discrimination, and shall for each offense pay to the State of Texas a penalty of not less than five hundred dollars nor more than five thousand dollars.

It is evident that the Railroad Commission adopted and promulgated Circular No. 199, copied in the court's findings of fact, by virtue of the authority vested in it by article 4562 above referred to, and that the judgment appealed from was recovered by the State under article 4574 by reason of its violation of the regulations prescribed by said circular. It is also apparent that the judgment was recovered in pursuance of proceedings had under and by virtue of the Railroad Commission Act.

The power to regulate the operation of railroads by a Commission rests upon the principle that the State has control over property and pursuits of a public nature. The Commission derives all its powers from the statute which creates it. Its functions and duties are administrative or ministerial, and neither legislative nor judicial. Its powers can not be legislative, for legislative powers can not,

strictly speaking, be delegated, nor can its powers be judicial in the proper sense of the term, for judicial power can only be exercised by courts and judges.

It is, however, sometimes difficult to clearly define the line between a delegation of legislative power and a grant of authority to perform acts which are in their nature quasi legislative, but not strictly so. The constitutional inhibition which prevents the delegation of legislative power does not prevent the grant of authority to make rules and regulations for the government of a particular subject. In creating a board of railroad commissioners and investing it with authority to make rules and regulations for the government of railroads, the Legislature really enacts the law which governs the subject but entrusts to the board the execution of the law. For the law the statute must be looked to, as the commissioners can not enact laws, although they may make reasonable rules and regulations when the authority to make such rules and regulations is expressly or impliedly conferred upon them by statute. (State v. Missouri Pac. Ry. Co., 92 Pac., 606, 76 Kan., 467; Atlantic Exp. Co. v. Wilmington, etc., R. Co., 111 N. C., 463, 16 S. E., 393, 18 L. R. A., 393, 32 Am. St. Rep., 805; Port Royal Min. Co. v. Hagood, 30 S. Car., 519, 9 S. E., 686, 3 L. R. A., 841; Locke's Appeal, 72 Pa., 491, 13 Am. Rep., 716.)

It will be seen from the statute quoted that the Railroad Commission is empowered to adopt regulations to govern and regulate railroad freight, correct abuses, discrimination and extortion in freight rates; that it prescribes that any railroad which shall fail or refuse to transport and deliver without delay any cars, loaded or empty, destined to any point over the line of any connecting line of railroad, under such regulations as shall be prescribed by the Commission, shall be guilty of discrimination, etc.; and that by "General Order" of the Commission shown by Circular No. 199, any railroad company operating a railroad between points in this State, which has received a loaded car intended for transportation over its line and thence to a point on any connecting line of railroad, shall haul the same over its line to its junction with the next connecting line, and then deliver it to such connecting line for further transportation.

It does not seem to be seriously contended that the order promulgated by the circular was not such a ministerial act of the Commission as was authorized by the Legislature, or that the authority thus conferred by the Legislature exceeded its power in a general way. But its insistence is that the order insofar as it is claimed by plaintiff to be applicable to defendant's own cars, was in excess of the authority conferred by the Legislature upon the commission, or, if not in excess of its authority, the Legislature exceeded its power as limited by the State and Federal Constitutions, in its effort to confer such authority.

If this contention should be upheld, in vain is the effort of a State to protect the public, in whose interest railroads are enfranchised, and on whom, in order to discharge their duties as servants of the public, are conferred extraordinary rights, privileges and immunities,

including the right of eminent domain, against the discriminations, wrongs and aggressions of railway companies. Then would the creature become superior to its creator, and railway corporations shake government out of its place, and the pillars thereof would tremble.

We have not, in the development of our civilization, reached the imagined stage of progress where freight is transported and. distributed through the media of pneumatic tubes owned and operated by the government; but the great bulk of it must be carried by railway companies in their cars built, maintained and operated by them for that purpose. Without cars to be run over it a railroad track would be useless, and without a railway track railroad cars can not be even kept in position for use, much less used for hauling freight. Hence, with the exception of a few favored by wealth or monopolistic influence, none of the great body of shippers of freight owns or can afford to own the cars in which his freight must be transported, but must per force of necessity rely upon the railroads, whose duty it is to equip their roads with and maintain a sufficient number of cars of the kind necessary to meet the demands of commerce, to furnish him with the cars necessary for the transportation of the freight he offers a railroad company for transportation. But defendant's insistence is that it performed this duty when it furnished the car to the Lumpkin Flour Mills and hauled it to Navasota Junction and tendered the freight to its connecting line, the Houston & Texas Central Railway, to be carried thence to destination in the car of that company.

As has been said: "Nearly every town of any considerable size is reached by the steam railroads. These roads connect with one another. Their tracks are laid on the same gauge. They are so laid for the purpose of transferring freight by the carload, without breaking bulk, from one road to another. The cars and equipment used by steam roads are built and equipped with the view that they may be transferred, as convenience of the business requires, from one road to another. The character of freight business which is carried on by steam roads contemplates a joint haul by the roads of a large portion of the freightage, and the necessities of the case require that there should be proper rules and regulations governing not only the freight traffic upon the particular lines of road, but the freight tariffs that shall be charged where freight is carried over different lines of road. All these things are matters of common knowledge, which the Legislature presumably takes cognizance of, and which courts are bound to know and the regulation of this vast commerce carried on over these steam roads requires rules."

Though there is some conflict of authority upon the question, the better opinion seems to be that a railroad company may be compelled to receive and transport goods in the cars of another company without compelling a breaking of bulk and the transfer of the goods from the cars in which they were originally loaded to the cars of a company over whose lines goods must pass to reach their destination. As is said (Burlington, C. R. & N. R. Co. v. Dey, 82 Iowa, 312, 48 N. W., 98, 12 L. R. A., 436), "The fact is that the transfer of cars

from one company to another, for transportation of property over more than one railroad, without breaking bulk has been practiced so long as to be recognized as a course of business of which we will take judicial notice. . . . Surely a course of business so long pursued and so extensively prevailing and demanded by the commerce of the company can not, when recognized and required by statute, become so oppressive in principle, so oppressive in operation, as to require the statute to be declared unconstitutional. A railroad company as a common carrier, is required to · receive and transport freight offered to it for transportation."

It is said by an eminent text-writer that, "There is, at all events, reason for affirming that railroad companies as instruments of commerce and as public agents, must haul cars of other companies and can not compel the breaking of bulk and the transfer of goods to their own cars. The consideration for the grant of the valuable franchises to railroad corporations is that, as instruments of commerce, they will promote the public good by transporting goods in such a mode as the interests of commerce require. It seems to us that the evolution and expansion of commerce is one of the things which railroad companies must take into account in accepting the franchises bestowed upon them, and that they must yield to the demands of development and progress. If there be no duty to haul the cars of another company and there is a right to compel the breaking of bulk and the transfer of goods, then a railroad company may compel the breaking of bulk, although its road has a haul of no more than the tenth or one-hundredth part of a mile. So, it may, if there be no such duty, compel the breaking of bulk, although the expense of the transfer may be very great, and, if there be no such duty, so it may compel a transfer, even though the transfer and the delay may destroy the property of the shipper. If there be no such duty, then a car starting from the Pacific coast destined to the Atlantic may be stopped and bulk broken as many times as there may be different lines · of railroads composing the route. We find it difficult to believe that the law ever intended that any such consequences should result." (4 Elliott on Railroads, sec. 1395.)

If this can be required, no reason can be perceived why the railroad company who receives the freight from the shipper and loads the freight, to be transported over its and other connecting lines, on its own car, should not be compelled to deliver the freight without breaking bulk by unloading and loading when delivered to its connecting carrier for transportation to destination. The same reason obtains in the one case as in the other. Indeed, it is said by Commissioner Prouty, speaking for the Interstate Commerce Commission, "We have no doubt as to the authority of the State with respect to intrastate traffic, and of· the United States with respect to interstate traffic, to compel the exchange of loaded freight cars by statute. Whatever may be true in fact, in theory at least the railway is a public servant, holding its franchise and property charged with a public trust. It can not use that property as it might strictly private property without reference to public interests. The business of railroading in this country at the present time is largely carried

on by the interchange of loaded freight cars and can not be conducted economically, in many cases not at all, except by that practice. It would be strange if government might not say that railways should, in the furtherance of public convenience, do, under proper terms and conditions, what their universal custom shows to be feasible and necessary." (10 Interstate Com. Rep., 187.)

In Louisville & N. Ry. Co. v. Central Stock Yards, 212 U. S., 132, decided October term, 1908, the Supreme Court of the United States says: "In view of the well known and necessary practice of connecting roads, we are far from saying that a valid law could not be passed to prevent the cost and loss of time entailed by needless transfer of shipment or breaking bulk in case of an unreasonable refusal by a carrier to interchange cars with another for through traffic." We do not think that the case of Central Stock Yards Co. v. Louisville & N. Ry. Co., 192 U. S., 568, 48 L. Ed., 565, countervails the principle that the State can compel freight to be transported in bulk over several lines of connecting railroads to destination in the car of the initial carrier. The other cases cited by defendant do not seem to touch the point involved in this case.

It appears in this case that a joint freight rate was established, whether by the roads themselves or the Railroad Commission it makes no difference inasmuch as it is not complained of, for the transportation of freight of the kind in question from Meridian to Millican, Texas, which rate defendant knew of when it received the shipment, for it charged such freight and received its payment at the time. It must be assumed that the part of the freight charges defendant was entitled to under the joint traffic arrangement included compensation for the use of its car in hauling the freight over the Houston & Texas Central Railway to destination. If the latter road had retained possession of its car longer than was reasonably necessary to deliver the freight and return the car to its owner, the laws of this State would have given defendant full redress for such a wrong. Therefore it can not be said that defendant would have been deprived of its property without due process of law or adequate consideration had it yielded obedience to the law.

In what we have said, we have anticipated the other two propositions under this assignment of error and determined them, as well as the first, adversely to defendant. It also disposes in the same manner of the second assignment of error.

It can not be said from the facts in this case that the court erred in holding that defendant's refusal to allow its car to go forward on the line of the Houston & Texas Central Railway Company was wilful. If the advice of counsel would excuse a railroad company from violating laws which seek to compel it to discharge its duties to the public, no such corporation could ever be convicted of violating the law. For an instance hardly ever occurs where eminent counsel advises a public service corporation to obey a State law which is intended to force it to discharge its duty to the public, until after such law has been fought through all the courts and has been declared valid by the court of last resort. In cases of this character it is the business of counsel to assail, destroy, break down or avoid the

force of the laws, both State and National, and when, after exhausting all their efforts to do so, they have failed, we hardly think the corporation is in an attitude to say, "I should not be punished for my disobedience to the law, for I did it under the advice of eminent counsel that the law was no law at all as against me." The judgment is affirmed.

### ON MOTION FOR REHEARING.

It will be observed from the agreed facts that the car in which the shipment was made was the property of the defendant railroad company; that at the time shipper made requisition for the car and when it was tendered by defendant to it, the railroad company did not have enough cars to meet the demands of the traffic over its own line of road nor to meet its statutory or common law obligations to shippers having freight to be carried over it; that at the time of such demand of the Lumpkin Flour Mill, defendant notified the shipper that it could only furnish a car to go to the end of its own line, the shipment to be there (Navasota) delivered to any consignee named by the shipper or to go to the next connecting line, but that it would not permit its car to go beyond its own line; that when the shipper began loading the car, as well as when it was loaded and tendered for shipment, defendant again advised the shipper that the freight would only be accepted to go to its point of junction with the Houston & Texas Central Railway Company, which is Navasota, and that it would not allow the car to go beyond its line at that point and that the bill of lading was so endorsed; that upon the arrival of the car at Navasota, defendant notified the Houston & Texas Central of the arrival of the shipment and requested it to furnish a car into which the shipment might be transferred, promising to make the transfer at its own expense, holding itself ready and willing to make the transfer of the freight when a car should be furnished by the other company, but that it refused and failed to furnish defendant another car for that purpose; that, though the Railroad Commission had fixed a through rate for the kind of freight mentioned from Meridian to Millican, and under the requirements of law defendant company had agreed with the Houston & Texas Central what proportion of such rate defendant should have for hauling on its own line of road, yet neither the rate so fixed, nor agreement between the companies made any provision as to cars of one company passing to another; that had defendant allowed its car to go to the other road it would have passed beyond its control and it could not have controlled the other railroad as to the time of returning the car and it would have been deprived of its use during the time it was off its road and until the Houston & Texas Central should have returned it; that defendant in this shipment accorded the shipper the same privilege accorded to other shippers under like circumstances and that no discrimination is claimed in this case by the State, its complaint being only of defendant's refusal to allow its car to go beyond its own line, contrary to the order of the Railroad Commission as pleaded and in violation of article 4574, Revised Statutes.

We have thought it proper to thus restate so much of the facts agreed upon by the parties, in order that we may clearly present the conclusion we have reached upon considering this motion as to the law applicable to the case.

While railway corporations are creations of the law charged with certain duties to the public which they are created to discharge, and though their property is acquired and held for the purpose of enabling them to perform such duties, and they may be controlled by the law in its operation in the interest of the public, yet their property does not belong to the people, but is as much their own as is the property of any citizen of the government; and the Constitution, both State and National, throws out the same shield of protection to them in their rights of property that it does to an individual. It can not be denied that it is the paramount duty of a railroad company to equip and maintain a sufficient number of suitable engines and cars to meet the demands of traffic along its own line of railway, or at least to use ordinary care and diligence to do so. If it fails in this, the State may compel its performance in the interest of the public.

For the State to go further than this and compel the road, in addition to supplying and maintaining sufficient facilities to carry freight and passengers over its own line, to keep enough cars to carry freight it has carried to the end of its line to its destination over other connecting lines of railway, in the absence of any traffic agreement to do so, would seem a stretch of power. Under the agreed facts, such was the effect of the requirement by the State of the defendant in this case. And it was on account of its failure to meet such demand the judgment appealed from was entered against it as a punishment for its disobedience. The demand of traffic on its own line required that the car in which the shipment was made should not be carried off on another road, in order that the defendant might discharge its duty to the public in carrying freight which it had to haul over its own line. It could not have complied with such demand, or discharged such duty, if compelled to deliver the car to another company to be carried off on its road and kept by it for an indefinite period of time. Hence, if defendant had obeyed the order of the Railroad Commission it would have necessarily failed in its duty to the public which it was chartered to perform and would have become liable in damages for such failure. Thus, it was empaled on either horn of the dilemma. The only way it could have extricated itself from such a position would have been to have supplied itself with as many cars as would have been required by the traffic over its own line and by its connecting roads receiving carloads of freight which it had hauled over its own. To require this, as we have said, would seem a stretch of power.

At common law shippers can not insist that the initial carrier shall provide them with sufficient cars for the transportation of their goods to any point beyond its own line of road; for the carrier's obligation to provide equipments was always held limited to service over its own route. (Houston & T. C. Ry. v. Buchanan, 42 Texas Civ. App., 620; Pittsburg, Cincinnati & St. Louis Ry. Co. v. Morton, 61 Ind.,

539, 576; 22 Harvard Law Rev., 574.)  In the authority last cited, after stating the common law doctrine as above enunciated, it is said:  "But apparently it is not impossible that statutes may even go to the length of requiring such service by reason of commercial necessity.  In a very late case (Louisville & Nashville R. R. Co. v. Central Stock Yards Co., 212 U. S., 132, 143, citing McNeill v. Southern Ry. Co., 202 U. S., 543, 559, 562), in declaring unconstitutional a statute requiring a railroad to furnish its cars for through transportation off its own route, the United States Supreme Court based its decision upon the point that the statute did not provide sufficient safeguards, not even providing for compensation; but the court suggested that all such legislation is not necessarily unconstitutional:  'It was argued, however, that the requirement that the plaintiff in error should deliver its own cars to another road was void under the fourteenth amendment as an unlawful taking of its property.  In view of the well known and necessary practice of connecting roads, we are far from saying that a valid law could not be passed to prevent the cost and loss of time entailed by needless transshipment or breaking bulk, in case of an unreasonable refusal by a carrier to interchange cars with another for through traffic.  We do not pass upon the question.  It is enough to observe that such a law perhaps ought to be so limited as to respect the paramount needs of the carrier concerned, and at least could be sustained only with full and adequate regulations for his protection from the loss or undue detention of cars, and for securing due compensation for their use.  The Constitution of Kentucky is simply a universal indiscriminating requirement, with no adequate provisions such as we have described.'"  See also 68 Central Law Journal, 361.

It will be observed that neither article 4574, nor the order of the Railroad Commission, taken either separately or together, are so limited as to respect the paramount rights and needs of the railway companies to their own cars on their own lines of road; that neither provides any compensation to the owner for the use of its cars in carrying freight beyond its lines over other railroads; and that no regulations whatever are made, either by statute or order of the Commission, for the protection of the owner of the cars from their loss or undue detention through the fault or negligence of the company who is required to receive them from the owner and haul the freight in them over its road.

The facts agreed upon in this case show that defendant's paramount right to the possession and use of its own car on its own line, which its traffic absolutely required, without which it could not discharge its duties to the public imposed by law, would have been completely ignored had obedience to the order of the Railroad Commission, as such order was construed by the court below, been performed by the defendant company; and that it would have been deprived of its property without any compensation whatever.  True, as is said in the original opinion, had the Houston & Texas Central failed to return the car within a reasonable time, defendant would have had a right of action against the other road for damages.  But

this would give no relief for other damages defendant may have incurred from its inability on account of being deprived of its car, to discharge its paramount duty to the public in having its road sufficiently equipped with cars to expeditiously carry over its own line all freight tendered it for transportation; nor for being deprived of the use of the car during the time it would be reasonably necessary for the other road to haul and deliver the freight thereon to the consignee at Millican and to return it to defendant company. For it will be seen from the facts recited in this opinion that such compensation was not provided for or included in the freight rate fixed by the Railroad Commission from Meridian to Millican.

When one of two constructions can be given a statute, one of which would be violative of the Constitution and the other not, it is the duty of a court to give it that construction which is in accordance with the fundamental law of the land. To give the statute in question and the order of the Railroad Commission the construction contended for by the State would be to hold that they are in derogation of the Constitution of the United States as well as of the State of Texas, in that defendant would be deprived of its property without due process of law and without adequate compensation. To give the statute and order in question the construction contended for by the defendant, no constitutional principle would be violated, for the statute and order would only apply to shipments in cars owned, hired or under the exclusive control of the shipper during the period of time necessary for their use in carrying and delivering the freight therein at destination.

Hence, we conclude we erred in our original opinion in affirming the judgment of the District Court. Wherefore this motion is granted, the judgment of the District Court, as well as that of this court, is reversed and set aside, and judgment is here rendered for the defendant.

*Reversed and rendered.*

Writ of error refused.   State of Texas v. Gulf, C. & S. F.