QUANAH, A. & P. RY. CO. v. BONE.

(No. 1248.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 28, 1917.)

1. CARRIERS ⚍105(2) –CARRIAGE OF GOODS— DAMAGES.

Where defendant carrier was notified that delay in transporting goods would cause plaintiff's employés to be idle, it is liable for special damages thereafter caused by delay and consequent idleness of employés.

2. TRIAL ⚍261—REQUESTED INSTRUCTIONS.

Refusing a requested instruction constituting a paragraph of a general charge, some portions of which were incorrect, is not erroneous.

3. CARRIERS ⬦184 — CARRIAGE OF GOODS — VARIANCE.

There is no variance between proof that defendant carrier delayed shipments at junction point with another carrier at a certain date, and allegations that the goods were delivered to defendant a month previous to such date.

4. CARRIERS ⬦187 — CARRIAGE OF GOODS — TITLE.

Evidence regarding goods consigned to plaintiff by third party *held* to make a jury question whether goods belonged to plaintiff or third party during transit.

5. CARRIERS ⬦76 — CARRIAGE OF GOODS — DELAY—RIGHT TO SUE.

The owner of material may sue a carrier for delay during transit, although the shipment was made in another's name.

6. APPEAL AND ERROR ⬦1053(3)—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY INSTRUCTION.

In an action for delay against a carrier, admitting evidence that goods were paid for by plaintiff instead of consignor, etc., *held* not erroneous where jury was instructed that plaintiff must establish his title to recover.

7. CARRIERS ⬦176 — CARRIAGE OF GOODS — CONNECTING LINES.

In action against a carrier for refusing to forward goods via a connecting line, an erroneous statement of route in the billing does not excuse defendant, who knew such statement was erroneous and refused to forward for other reasons.

8. EVIDENCE ⬦138—ADMISSIBILITY—SYSTEM.

While ordinarily evidence regarding similar wrongs inflicted on others is inadmissible, yet evidence showing a universal rule or system is admissible.

9. CARRIERS ⬦185(2)—CARRIAGE OF GOODS—EVIDENCE.

In action against a carrier for refusing to deliver goods to a connecting line, evidence that it constantly refused to make such deliveries is admissible, where evidence conflicted regarding defendant's refusal to deliver and its reasons therefor.

10. CARRIERS ⬦185(1)—CARRIAGE OF GOODS —CONNECTING LINES.

Under Rev. St. 1911, arts. 6687–6691, requiring carriers to forward goods via connecting lines provided empty cars be exchanged for the loaded forwarded cars, defendant has burden of showing that its failure to forward was excused by not receiving empty cars.

11. EVIDENCE ⬦96(1) — STATUTES ⬦279 — EXCEPTIONS—BURDEN OF PROOF.

Ordinarily, a defendant seeking exceptions from liability under a statutory proviso has the burden of pleading and proving such exception.

12. CARRIERS ⬦176 — CARRIAGE OF GOODS — CONNECTING LINES.

Under Rev. St. 1911, arts. 6687–6691, requiring connecting carriers to forward goods within a reasonable time and authorizing the railroad commission to fix such time, a carrier transferring goods within the time fixed by the commission is not liable, although it might reasonably have done so sooner.

Appeal from District Court, Motley County; J. H. Milam, Judge.

Suit by Fred Bone against the Quanah, Acme & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

G. E. Hamilton, of Matador, and J. P. Marrs and D. E. Decker, both of Quanah, for appellant. Bouldin & Surles, of Matador, and Martin, Kinder & Russell, of Plainview, for appellee.

BOYCE, J. Suit was brought by appellee, Fred Bone, against appellant, Quanah, Acme & Pacific Railway Company, for damages and penalties, under the provisions of articles 6670 and 6671, Revised Statutes, for the alleged failure and refusal on the part of the defendant to deliver to the Motley County Railway Company, a connecting carrier, operating from a junction with defendant's road, to Matador, Tex., a number of shipments of tools and lumber shipped to plaintiff at Matador, Tex. Plaintiff recovered judgment for $750 damages and for a penalty of $125 each on ten different shipments.

Bone was a contractor, and had the contract for erecting a building in the town of Matador, and the various shipments consisted of tools and material for use in the construction of said building. The jury found, and its findings are not complained of, that the defendant railway company failed and refused to deliver to the Motley County Railway Company ten of such shipments. These shipments were taken by the defendant railway company to Roaring Springs, and some of them at least held in excess of the time provided by the regulations of the Railway Commission for delivery to its connecting carrier; the plaintiff being forced to haul some of the material from Roaring Springs by wagon. The actual damages sustained consisted in having a number of men on pay idle and inability to have the work proceed regularly, as it should, for lack of material and tools.

[1, 2] By its first, sixth, and ninth assignments, appellant complains that the special damages, to wit, damages on account of having idle men on pay and that resulting from having to carry one wall of the building up at a time instead of building all walls simultaneously, due to lack of material, are not recoverable, because it is not alleged or proven that the appellant had notice of such damages. There is pleading and proof to the effect that the plaintiff, while the shipments were being held at Roaring Springs, notified the agent of the defendant company of the fact that said material was needed for use in said building, and that he had men on pay, who would be idle on account of lack of material. Under such circumstances, the defendant would be responsible for the special damages of which it had notice subsequently sustained. Bourland v. C., O. & G. Ry. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647; Q., A. & P. Ry. Co. v. R. D. Jones Lbr. Co., 178 S. W. 862. It is not necessary that notice, in order to impose liability for the special damages, should extend to the details of the situation. Western Union Tel. Co. v. Edsall, 74 Tex.

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

329, 12 S. W. 41, 15 Am. St. Rep. 835; K. C., M. & O. Ry. Co. v. Bell, 197 S. W. 322, and authorities cited. The pleading, however, alleges that specific notice was given that plaintiff's damage would consist in having to pay his men that were idle on account of lack of material, and it may be that under such allegations he would be confined to a recovery of such damages. The ninth assignment, which raises this question, however, cannot be sustained because it complains of the refusal to give a requested instruction which is only a paragraph of a general charge requested by the defendant submitting the entire case, and some of the instructions contained in this general charge do not correctly state the law; besides, it would have been manifestly improper for the court to have given this entire charge in connection with his own submission of the case on special issues. The court below was not required to select portions of the charge and give it to the jury. For these reasons, we overrule the said first, sixth, and ninth assignments.

[3] The second assignment complains of the admission of certain testimony in reference to three cars containing lime, lumber, and cement plaster, respectively; it being asserted that there is a variance between the allegations and proof as to these three shipments, since it was alleged that the wrong in holding these cars occurred about August 5th to 10th, while the evidence was as to the acts occurring more than one month later. The petition does not attempt to state the date of the withholding of the cars by the defendant at Roaring Springs. It charges that on or about the 5th and 10th days of August, 1915, the plaintiff purchased and delivered such material to the defendant at Quanah, Tex., for transportation. There does not seem to have been any confusion as to the identity of the shipments, and we overrule this assignment.

[4-6] By the third assignment complaint is made of the introduction of evidence as to a car of lumber and a car of cement plaster, on the ground that the evidence shows that such material belonged to the R. D. Jones Lumber Company and plaintiff was not therefore entitled to recover damages on account of delay in transportation thereof. These two cars were shipped in the name of the R. D. Jones Lumber Company. Plaintiff's superintendent testified that Bone had a contract with the R. D. Jones Lumber Company by which said company was to furnish such material for the building delivered and to be paid for at Matador. Plaintiff testified that the R. D. Jones Lumber Company was his agent in buying the cement, plaster, and lumber, and the railway company had notice that such material belonged to him; that he bought the lumber from Jones. "It was a special car of stuff he had ordered for me. He would not have ordered it if it had not

been for me." He further testified that he paid the draft drawn against the R. D. Jones Lumber Company covering the purchase price of the lumber; also, that he supposed that if the material had been lost in transit the loss would be on the R. D. Jones Lumber Company. We do not think it could be said as a matter of law that the evidence shows that the title to this material was not in the plaintiff. It would be, in our opinion, a question of fact as to the intention of the parties. J. & G. Lippman v. Jeffords-Schœnmann Produce Co., 184 S. W. 534; Robinson & Martin v. H. & T. C. Ry. Co., 105 Tex. 185, 146 S. W. 537. If the plaintiff was the owner of the material, he could sue for the damages, notwithstanding the fact that the shipment was in the name of the R. D. Jones Lumber Company. Authorities last above cited; G., C. & S. F. Ry. Co. v. Drahn, 163 S. W. 330; F. W. & D. C. Ry. Co. v. Caruthers, 157 S. W. 241, and authorities there cited. The court instructed the jury that the plaintiff could not recover damages or penalties on any shipment unless the jury should find "that the shipment was the property of the plaintiff and the title to the same was in plaintiff." Under these circumstances, we do not think the admission of the testimony was erroneous.

[7] The fourth assignment complains of the introduction of evidence with reference to a marble column, because it appears from the bill of lading that the word "Matador," in the blank for destination, had a line run through it, and immediately under such word, following a blank for route, was written "Russelville." This assignment is without merit. The record shows that the defendant knew that there was a mistake in the billing and treated the shipment as being destined to Matador, and it was not declining to forward the shipment to Matador on this account, but held it at Roaring Springs for other reasons, allowing the plaintiff to come and get it at that place on payment of the freight charges.

[8, 9] The fifth assignment complains of the admission of testimony of defendant's agent at Roaring Springs that for a period of time in August, and possibly September, 1915, the defendant refused to deliver any freight to the Motley County Railway Company, consigned to Matador. It is true that, ordinarily, in a trial based on allegations of one wrong, evidence as to similar wrongs, inflicted on others, is not admissible. The reasons for this rule, however, do not apply where the evidence, instead of showing occasional and specific instances of a similar character, shows a universal rule or system with reference to the matter. Wigmore on Evidence, § 92; Ft. Worth Belt Ry. Co. v. Cabell, 161 S. W. 1087. If such system has any materiality in determining any issue in the case, we think the testimony would be admissible. In this case there was a con-

flict in the testimony offered by the plaintiff and defendant as to whether the defendant failed and refused to deliver some of the shipments within the time required by law and as to the purpose of its holding such shipments at Roaring Springs, and we think this testimony was admissible on this issue.

The defendant excepted to plaintiff's petition for recovery of penalties for failure to deliver loaded cars to the Motley County Railway Company, because the petition did not allege that the Motley County Railway Company had cars of any kind to exchange for the loaded cars containing plaintiff's shipment, so that it could comply with the regulation of the Railway Commission for exchange of cars under such circumstances, and the seventh assignment complains of the overruling of this exception. The defendant, by special answer, pleaded that the Motley County Railway Company refused to deliver to the defendant any cars in exchange for the loaded cars destined to Matador, and that any delay in delivery of plaintiff's cars was caused by this fact. Evidence was offered to the effect that the car of cement plaster and the car of lumber were not delivered because the Motley County Railway Company would not exchange empty cars for these loaded cars; it being shown that the defendant company issued written notices addressed to the consignee and to the Motley County Railway Company that said carloads of freight consigned to Matador were held by the defendant and would be delivered to the Motley County Railway Company in exchange for an empty car. In connection with this proof, the following order of the Railroad Commission of Texas, made November 21, 1907, was introduced in evidence:

"Pursuant to notice and hearing had in cause No. 785, before this commission, it is ordered by the Railroad Commission of Texas that for the purpose of putting into effect the provisions of chapter 184, General Laws of the Thirtieth Legislature, any railroad company operating between points in the state of Texas, by giving notice to its connecting lines at any junction points, as provided below, shall be entitled to demand of said connecting line the delivery to it of any number of empty cars of like character for each loaded car delivered by said railway."

By its fourteenth assignment appellant assigns error on the refusal of the lower court to give a requested instruction to the effect that plaintiff could not recover damages or penalties in such instance, where defendant refused to deliver to the Motley County Railway Company loaded cars, where such refusal was based upon its refusal to exchange with defendant empty cars for such loaded ones.

In support of the proposition that the defendant was not liable for damages for refusal to allow its cars to leave its own line of road, appellant cites the following cases: G., H. & S. A. Ry. Co. v. Jones, 104 Tex. 92, 134 S. W. 328; G., C. & S. F. Ry. Co. v. State, 56 Tex. Civ. App. 353, 120 S. W. 1028; F. W. & D. C. Ry. Co. v. Williams, 77

Tex. 121, 13 S. W. 637. These cases do so hold. However, the shipments in such cases were made prior to the time of the taking effect of chapter 184 of the Act of 1907, which now constitutes articles 6687–6691, R. S. The case of G., C. & S. F. Ry. Co. v. State, supra, is the leading case, and the ruling is expressly based on the fact that the order of the Railway Commission which attempted to require the carrier to deliver its loaded car to its connecting line did not provide adequate protection to the carrier for compensation and from loss or undue detention of cars, etc. It was expressly recognized that legislation which did provide for such protection would probably be valid; the following being quoted with approval from a decision of the Supreme Court of the United States in the case of L. & N. R. R. Co. v. Central Stockyards Co., 212 U. S. 132, 29 Sup. Ct. 246, 53 L. Ed. 441:

"In view of the well-known and necessary practice of connecting roads, we are far from saying that a valid law could not be passed to prevent the cost and loss of time entailed by needless transshipment or breaking bulk, in case of an unreasonable refusal by a carrier to interchange cars with another for through traffic. We do not pass upon the question. It is enough to observe that such a law perhaps ought to be so limited as to respect the paramount needs of the carrier concerned, and at least could be sustained only with full and adequate regulations for its protection for loss or undue detention of cars, and for securing due compensation for their use."

The act of 1907, above referred to, meets this situation, so that the liability of the railway company for its act in refusing to deliver the cars in question would be determined by the provisions of this act in connection with the regulations of the Railway Commission, adopted in pursuance to its provisions. This act is very lengthy, and it is not necessary to here quote it. In brief, it provides at great length for the protection of the carriers in respect to cars delivered to a connecting line, and seems to meet all of the conditions referred to in the opinion of the courts in the cases cited. Article 6687 provides in part:

"It is hereby declared to be the duty of every railroad company operating a line of railway in this state * * * as to all services to be performed within the limits of this state, as to such freight and cars, to transport same within a reasonable time, * * * and, if destined to a point beyond the line of such railroad, then to transport and deliver within a reasonable time such freight in such loaded car or cars to the connecting carrier forming any part of the route over which such shipment is made, * * * and it shall likewise be the duty of each connecting line of railroad * * * to receive and transport within a reasonable time such loaded car or cars offered or tendered to it, etc."

Other provisions of the statute make the interchange of cars mandatory, provide compensation therefor, and article 6689 provides that:

The Railroad Commission is empowered to make regulations as to "the time within which and the manner by which railroad companies

shall give notice or make demand upon each other for cars to be furnished by one railroad company in exchange for loaded cars, or to have its cars returned," etc.

The concluding clause of article 6690 is as follows:

"Provided, that no railroad company shall be compelled to furnish its own cars to any other railroad company which is involved, except upon reasonable security furnished to it to protect it from loss or damage to or destruction of such cars and compensation for the use thereof, and in no event shall any railroad company be required to furnish any cars to any connecting line, except to exchange for other cars reasonably suitable for the transportation of freight."

The order adopted by the Railway Commission, which we have quoted above, was, as it states, passed in pursuance to the terms of this act. The reference in the order to "notice as provided below" is evidently to further provisions as to the time, place, and manner of giving such notice in pursuance to the terms of the statute which we have quoted. No evidence as to this provision was offered by either party. The order of the Railroad Commission may with propriety, and probably did, provide for some general notice as to requirements of this character—and perhaps before the arrival of the specific car at the junction point—for if railway companies were permitted to accept the shipments and give no notice of its demands to the shipper or its connecting line until the arrival of the car at the junction, and then in individual and sporadic cases, hold the car up and serve notice on the shipper and connecting line of its demand for an empty car in exchange, the evident purpose of the legislation would be thwarted. Without the additional provision of the regulation as to notice referred to in the order introduced in evidence, it would not be possible to determine whether the notice given was in accordance with the rules and regulations of the commission. So that the record does not disclose whether or not the railroad company was within its rights in withholding the shipment under the circumstances.

[10, 11] A decision as to its liability for refusal to deliver the shipment would therefore depend on a decision as to the burden of proof on the issue as to whether the refusal to deliver the car was justified under the provision for exchange of cars. If this defense is an affirmative defense, then the burden of establishing it is upon the defendant. Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593. The defendant below pleaded it as an affirmative defense, and it was evidently so treated, and we believe correctly, as it comes within the terms of a proviso, as we have shown above, to an enactment, having the general purpose and effect of requiring carriers to transport freight to destination without the delays and loss incident to transfer of carload shipments at junction points of connecting carriers. It is the general rule that a defendant seeking the benefit of exception from liability, on account of a proviso or exception to general liability, has the burden as to pleading and proof of such issue. Gerlach Mercantile Co. v. Hughes-Bozarth-Anderson Co., 189 S. W. 790; Continental Casualty Ins. Co. v. Jennings, 45 Tex. Civ. App. 14, 99 S. W. 425; Frost v. Grimmer, 142 S. W. 615; Starr v. Ætna Life Ins. Co., 41 Wash. 199, 83 Pac. 113, 4 L. R. A. (N. S.) 636, and note. If we are correct in this conclusion, the plaintiff did not have to anticipate the defense and negative it in his pleading, so that the exception referred to was properly overruled, and, the defendant having failed to discharge the burden on the issue tendered by its answer presenting the issue, the instruction requested was also properly refused.

[12] The defendant pleaded that, on account of lack of facilities for transferring freight at the junction of its road with the road of the Motley County Railway Company and the condition of the grade and tracks at such place, it was necessary to take all cars and freight intended to be delivered to the Motley County Railway Company, past such junction to Roaring Springs and delivered them from its trains, returning from Roaring Springs, eastward, and that plaintiff's shipments were taken to Roaring Springs on this account alone and were returned and delivered to the Motley County Railroad Company within the time fixed by the rules of the Railroad Commission for delivery of such freight. The rule of the Railroad Commission with reference to the receipt and transportation of freight in carload lots provides:

"That twenty-four hours' additional time shall be allowed at each junction point or divisional terminal where it is necessary to rehandle the car or cars; also forty-eight hours' additional time when it is necessary to transfer contents from one car to another."

There was evidence which tended to show that some of the shipments, particularly two cars of face brick, which were evidently part of the eight carloads, on which recovery of penalty was allowed, were carried to Roaring Springs under these circumstances, but were delivered to the Motley County Railway Company within less than 24 hours after such cars first reached the junction. The defendant requested, and the court refused to give, the following instruction:

"If you believe from the evidence that the defendant delivered to the Motley County Railway Company any of the loaded cars described in the plaintiff's petition within 24 hours from the time that said cars first arrived at Matador Junction, you will find for the defendant as to all such cars, both on his claim for damages for delay and also as to his claim for penalties thereon, provided that you further find that it was necessary to rehandle said cars by the defendant before they could be delivered to the Motley County Railway Company, and you are further instructed that the fact that defendant may have carried said cars to Roaring Springs during such 24 hours' period would not be a violation of the law of its duty to the plaintiff."

The court, in connection with the submission of issues requiring the jury to find whether the defendant failed or refused to deliver to the Motley County Railway Com-

pany any carload shipments, instructed the jury as follows:

"You are instructed that, where a railway company received freight originating in this state for transportation destined to a point beyond its own line of road, it must deliver it to its connecting carrier promptly at the point of intersection of the two roads; that it has no right, after receiving such freight and contracting to deliver it to the place of destination, to refuse to deliver, nor has it the right to withhold the same beyond a reasonable time, and the Railroad Commission has fixed 24 hours as a reasonable time in carload shipments and 48 hours as a reasonable time in less than carload shipments, if such time be necessary in handling said shipments."

This charge was a correct statement of the law, except for the limitation contained in the last clause quoted. The suit is for penalty and damages for unjust discrimination under the statute, which provides that a carrier shall be guilty of unjust discrimination if it "shall fail or refuse under such regulations as may be prescribed by the commission, to transport and deliver without delay, or discrimination, any passengers, tonnage or cars, loaded or empty, destined to any point on or over the line of any connecting line of road." The regulation of the Railroad Commission having given the carrier 24 hours to deliver the carload shipment, we do not think the statute would apply where the freight was actually delivered without such time, though it might have been delivered earlier. This court held, in the case of Q., A. & P. Ry. Co. v. Moore, 189 S. W. 322, that since it was the duty of the railway company to have proper facilities at the junction point the failure to deliver within the time prescribed by law could not be excused by reason of the fact that the lack of facilities required the freight to be taken to Roaring Springs before it could be transferred. In that case the delivery was not made within the legal time. We do not think that the fact that the shipments were taken to Roaring Springs would make any difference if they were actually delivered within the time limit fixed by law. The charge given was therefore, in our opinion, not a correct statement of the law, and, as the jury had no correct instruction by which to ascertain the liability of the defendant on this issue, the requested charge should have been given. The last clause of such requested charge is not, abstractly considered, correct; but it is correct in its application to this particular question of liability. We therefore sustain appellant's twelfth assignment.

If the facts in evidence, upon another trial, are sufficient to require it, the court should also instruct the jury that the defendant would not be liable for the penalty on shipments in less than carload lots if they were delivered to the connecting carrier at junction point, within 48 hours after first arrival at the junction point, in accordance with the regulation of the Railroad Commission as to the time of delivery of less than carload shipments.

We have examined the other assignments, but find no error presented, and overrule them.

Reversed and remanded.