### CITY OF DENISON v. MUNICIPAL GAS CO. (No. 9177.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 15, 1923. Rehearing Denied Jan. 12, 1924.)

1. Gas ⚖️14(1)—Public service commissions ⚖️6—Statute subjecting gas utilities to regulation by Railroad Commission held constitutional.

Vernon's Ann. Civ. St. Supp. 1922, arts. 4042½–4042½q, subjecting gas utilities to regulation and control by the Railroad Commission, held constitutional as against the objection that the Railroad Commission is a constitutional body upon which there cannot be imposed duties foreign to its purpose as a Railroad Commission; for Const. art. 10, § 2, and article 16, § 30, do not create a Railroad Commission as a constitutional office nor deprive the Legislature of the right to confer additional duties upon the Commission.

2. Constitutional law ⚖️26—Constitutions restrain, but do not confer power upon, state Legislatures.

State Legislatures do not receive from Constitutions the power and authority they exercise in the realm of law enforcement, but a Constitution is a limitation rather than a grant of power.

3. Constitutional law ⚖️52—Statute subjecting gas utilities to regulation by Railroad Commission held constitutional.

Vernon's Ann. Civ. St. Supp. 1922, arts. 4042½–4042½q, subjecting gas utilities to regulation and control by the Railroad Commission and permitting review of the Commission's action by suit in a court in Travis county, held constitutional as against the objection that it undertakes to deprive courts of constitutional duties conferred upon them and to empower a nonjudicial power to exercise such judicial duties; for the fixing of rates and regulating gas utilities, as provided by the statute, is not a judicial function, and is therefore not an invasion by the Legislature of the judicial branch of the government.

4. Constitutional law ⚖️48—Construction should favor constitutionality.

The presumption is always in favor of the constitutionality of a legislative act, and, whenever possible, a statute assailed must be so construed as to give it force and validity.

### On Motion for Rehearing.

5. Constitutional law ⚖️14—Doctrine of implied powers and restraints stated.

The doctrine of implied powers and restraints results from the fact that it is never practicable in a Constitution to specify in detail all its objects and purposes, or the means of carrying them into execution; and therefore constitutional powers are granted or prohibited in general terms, from which implied powers and prohibitions necessarily arise.

6. Constitutional law ⚖️14—Implied constitutional prohibition against conferring new duties on constitutional officer must clearly appear.

For an implication to arise restraining the Legislature from conferring new duties on a constitutional officer unrelated to the customary duties of the office, it must clearly appear that the prohibition is necessary to safeguard and to not frustrate or disappoint the purpose of the people expressed in the constitutional provisions under consideration.

7. Constitutional law ⚖️19—Contemporaneous departmental interpretation of statute of great weight.

In determining the constitutionality of statutes, great weight is given to contemporaneous interpretations of the statutory provisions by the different departments of the government.

Appeal from District Court, Grayson County; C. R. Pearman, Judge.

Suit by the City of Denison against the Municipal Gas Company. From judgment for defendant, plaintiff appeals. Affirmed.

Hamp. P. Abney, of Sherman, for appellant.

Head, Dillard, Smith, Maxey & Head and J. F. Holt, all of Sherman, and J. W. Hassell and F. J. Scurlock, both of Dallas, for appellee.

HAMILTON, J. This suit was instituted by appellant, the city of Denison, to restrain appellee by injunction from collecting from patrons within the corporate limits of Denison a fixed monthly charge, designated as a "ready to serve" charge, for fuel gas in addition to the charge for gas consumed.

A temporary injunction having been granted upon presentation of the petition, appellee filed a motion to dissolve and made it appear that the charge complained of had been duly authorized by the Railroad Commission of Texas, and that, accordingly, the asserted right which appellant was undertaking to prevent it from exercising was a lawful one, and that no court except the district court of Travis county, Tex., had any jurisdiction to entertain the suit.

Title 63B of Revised Texas Civil Statutes (Vernon's), 1922 Supplement, which comprises articles 4042½ to 4042½q, declares gas utilities to be affected with a public in-

terest and subjects them all to regulation and control by the Railroad Commission. The Railroad Commission is given power, among other powers, to fix rates. Provision is made for an appeal to the Railroad Commission by any gas utility affected by the action of any city government in reducing or otherwise fixing rates, rentals and charges. It is enacted that if any party at interest ᵎ be dissatisfied with the Railroad Commission's decision of any rate, classification, rule, charge, order, act, or regulation adopted by the Commission upon appeal to it, then such party may institute suit in a court of competent jurisdiction in Travis county to have the action of the Commission reviewed.-

From the order dissolving the injunction the city of Denison has appealed upon the single proposition that the law is unconstitutional because the Railroad Commission is a constitutional body as distinguished from one created by statute, and hence the Legislature has no power to impose upon it duties foreign to it or that interfere with those given by the Constitution. And the constitutionality of the law is assailed for the additional reason that it undertakes to deprive courts created by the Constitution of the duties the Constitution empowers them to perform and to confer those duties upon a nonjudicial body.

[1] Appellant places reliance upon its construction of section 2 of article 10 and section 30 of article 16 of the Constitution to demonstrate the invalidity of the statute. These are the only provisions of the Constitution which either by express language or by inference pertain to the Railroad Commission.

Section 2, art. 10, is as follows:

"Railroads heretofore constructed, or which may hereafter be constructed, in this state are hereby declared public highways, and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and enforce the same by adequate penalties; and, to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable."

Section 30, art. 16, is expressed in this language:

"The duration of all offices not fixed by this Constitution shall never exceed two years; provided, that when a Railroad Commission is created by law it shall be composed of three commissioners, who shall be elected by the people at a general election for state officers, and their terms of office shall be six years; provided, railroad commissioners first elected after this amendment goes into effect shall hold office as follows: One shall serve two years, and one four years, and one six years, their terms to be decided by lot, immediately after they shall have qualified. And one railroad commissioner shall be elected every two years thereafter. In case of vacancy in said office, the Governor of the state shall fill said vacancy by appointment until the next general election."

[2] A reading of the excerpt from the Constitution first above copied does not reveal the creation of a Railroad Commission thereby nor the specific purpose that such Commission shall be created. No careful, analytical consideration of it can impart that effect. The mandate is laid upon the Legislature in this provision to regulate tariffs, correct abuses, and prevent discriminations and extortion. The explicit permission to establish means and agencies with such powers ᵃs the legislative discretion may dictate to accomplish the required objects is embodied in the last clause of the section. This, however, is neither a grant of power and authority nor a definite command to exercise power and authority. At most, it is, in our view, a mere recognition of the police power which already inherently rested in the Legislature; no constitutional restriction thereon ever having been imposed. State Legislatures do not receive from Constitutions the power and authority they exercise in the realm of law enactment. It is to be borne in mind that in all American jurisdictions, the state Legislature is virtually omnipotent in the matter of legislation except in so far as the inhibitions of the Constitution plainly or by clear and necessary implication limit its power. The Constitution is not the source of the Legislature's power. That power inheres in the Legislature in the nature of things, because it speaks and acts in the capacity of representing and expressing the sovereignty ˙of the citizenship. The Constitution, instead of being a grant of power to the Legislature, is the fundamental restriction and limitation by the people of its inherent power. The Constitution merely restrains and limits that power, and, as a general rule, any legislation not clearly inhibited by the Constitution may be enacted validly in any manner and as to any matter with reference to which no prescription is plainly discoverable in the Constitution.

The clause of the section above copied which merely declares that the Legislature "may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable" is at most only directory. While authorities sometimes treat constitutional provisions relating to the legislative department of government as being "declaratory" or "permissive," it is only those which are either mandatory or prohibitive that measure a law's validity.

Only a strained construction, and one which the words ˙do not import but rather exclude, could shape the language of this

section of article 10 into a requirement that the Legislature must establish a Railroad Commission, or any other body exclusively clothed with the power to deal with the subject over which the Legislature is enjoined therein to exercise its power and authority. The section does not create the Railroad Commission or any other office, nor does it require that such office shall be established by the Legislature. It does not lay out and specify that whenever such office is created by the Legislature the duties of it shall be confined exclusively to the regulation of railroad rates, etc. At most, that clause of the section which declares that the Legislature "may provide and establish * * * means and agencies" is only suggestive. It leaves unabridged the field of legislative discretion as to whether or not any such means or agencies shall be provided, and also what functions and duties shall be imposed upon them. We are therefore of the opinion that there is nothing in this section of the Constitution to sustain the view that the Railroad Commission which was established by the Legislature soon after its adoption is a constitutional office, or that the duties of such office when established by the Legislature are limited and restricted exclusively to matters pertaining only to railroad rates, abuses, and discriminations of an unjust nature. In other words, this constitutional provision embodies neither a requirement nor a restriction upon the Legislature as to the creation of a Railroad Commission, and it embodies neither a requirement nor restriction excluding from the Legislature the right to embrace within the scope of such Commission's authority, when created, the duty and the authority to enforce the police power prescribed and conferred upon it by the Legislature as to matters other than those pertaining exclusively to railroads.

But it is contended that after the adoption of this amendment embraced in section 2 of article 10 of the Constitution, which was adopted on December 19, 1890, the amendment embraced in section 30 of article 16, above copied, and which was adopted on December 21, 1894, has the effect, especially considered in connection with section 2 of article 10, and in the light of the history of the adoption of these articles, to make the office of Railroad Commissioner a constitutional office with duties pertaining exclusively to the matters which section 2 of article 10 requires the Legislature to deal with and regulate. We cannot accede to this view. Section 30 does not create a Railroad Commission, but merely provides that when such Commission is created by law, that is, by legislative act, then it shall consist of three members, whose terms of office are fixed by the Constitution. This section deals with the terms of offices, generally, and specially provides in the instance of railroad commissioners that their respective terms shall be six years only in the event such office is created by the Legislature. That portion of section 30 of article 16 which requires that one railroad commissioner shall be elected every two years, and that in case of vacancy in the office the Governor shall fill the vacancy by appointment until the next general election, merely qualified the provision limiting the Legislature's power as to the number of commissioners in the event the Legislature creates the office, and fixing the respective terms of the members of the Commission so long as it exists under legislative creation and authority. Since neither of the constitutional provisions relied upon by appellant creates the Railroad Commission or requires its creation by the Legislature, we are of the opinion that it must be held to be not a constitutional but a legislative office. And since neither expressly nor by clear and necessary implication are the duties of such body, when created and kept in existence by the Legislature, restricted and confined exclusively to dealing with and regulating matters pertaining to railroads, we are constrained to hold that the Legislature is under no constitutional inhibition which renders invalid the imposition of powers and duties conferred upon the Commission by the provisions of article 4042½ et seq.

[3] The act is not unconstitutional on the ground that it undertakes to deprive courts of constitutional duties conferred upon them and to empower a nonjudicial body to exercise such judicial duties. The fixing of rates and regulating gas utilities in the manner provided by the terms of the statute is not a judicial function, and is therefore not an invasion by the Legislature of the judicial branch of government.

[4] It is ever to be borne in mind by the court that is called upon to strike down a legislative enactment that, whenever it is reasonably possible to do so, the statute assailed as being unconstitutional must bo so construed as to give it force and validity. A legislative enactment is the solemn exercise of governmental power by a co-ordinate branch of government bound by the same duty as is the judicial department to respect and conform its actions to the Constitution. It is to be presumed that the Legislature has acted in conformity with the fundamental law, and therefore the presumption always is in favor of the constitutionality of a legislative act. In measuring the enactment attacked, if any doubt intrudes to affect the conclusion of the court, such doubt must be resolved in favor of the statute and its constitutionality sustained unless by every fair construction its invalidity clearly and palpably appears.

Appellant relies upon the maxim, "Expressio unius est exclusio alterius," and maintains that since section 2 of article 10 exclusively comprehends a command to the Legislature to regulate railroads, and since

section 30 of article 16 fixes the terms of railroad commissioners at six years, the maxim has proper application and, accordingly, if applied, inhibits legislation imposing upon the Railroad Commission duties relating to any other matter. This maxim cannot be applied in expounding constitutional provisions so as to shut out the elementary rule above stated to the effect that only in those instances where the Constitution either expressly or by clear and unavoidable implication restrains legislative power, the exercise of that power in any enactment of a police regulation must be sustained by the courts.

While, no doubt, the regulation of railroads alone was the thought in the minds of the people at the time the constitutional provisions were adopted, they contained no language which indicates a purpose to create a Commission or other agency clothed exclusively with the power and authority to deal with matters solely pertaining to railroads, and therefore the imposition of those duties and powers upon a body clothed with authority over other things is not exclusively indicated.

Since the statute fixes the jurisdiction for review of the action of the Railroad Commission exclusively in courts of Travis county, Tex., the court below was without jurisdiction to review any rate fixed by the Railroad Commission upon appeal to that court by appellee; and, it appearing that the rate complained of had thus been fixed by the Railroad Commission, we think the court below was without jurisdiction to grant the injunction in the first instance and that its action in dissolving it was proper.

Being of the opinion that the statute does not contravene any constitutional provision, and that the court below was without jurisdiction to grant the writ of injunction, we will affirm the judgment dissolving it.

Affirmed.

### On Motion for Rehearing.

LOONEY, J. The opinion of the court affirming the judgment of the court below was rendered by Associate Justice HAMILTON, who recently resigned from this court. The opinion of Judge HAMILTON is a clear, forceful, conclusive argument, fully justifying the judgment of affirmance, and nothing said now is intended to subtract from or add to what Judge HAMILTON so well said in discussing the questions under consideration by him.

Counsel for appellant has filed a lengthy motion for rehearing, in which it is strenuously insisted that the office of railroad commissioner is a constitutional office, and, being such, that the Legislature was without authority to confer upon the Commission any duties other than those relating to the regulation of railroad freight and passenger tariffs, the correction of abuses, the prevention of unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads of this state, and to enforce the same by adequate penalties. The contention is made, in effect, that when the Legislature clothed the Commission with these duties, it exhausted its power.

[5, 6] To this proposition we cannot assent, even though it should be determined, which we do not, that the Railroad Commission is a constitutional office as contended by appellant. To assent to the doctrine insisted upon by appellant, we would have to find in the Constitution, either an expressed or an implied limitation prohibiting the Legislature from conferring other or unrelated duties on a constitutional officer. No express limitation can be found in the Constitution; hence, if the Legislature was prohibited from placing under the jurisdiction of the Railroad Commission the "Cox Law" relating to gas utilities, being chapter 14 enacted at the Third Called Session of the Thirty-Sixth Legislature (Vernon's Ann. Civ. St. Supp. 1922, arts. 4042½–4042½q), it must be by reason of some implied restraint. The doctrine of implied powers and restraints is well known to the law of constitutional construction. It results from the fact that it is never practicable in a Constitution to specify in detail all its objects and purposes, or the means of carrying them into execution; therefore, constitutional powers are granted or prohibited in general terms, from which implied powers and prohibitions necessarily arise. In order for an implication to arise, restraining the Legislature from conferring new duties on a constitutional officer, unrelated to the customary duties of the office, it must clearly appear that the prohibition is necessary to safeguard and to not frustrate or disappoint the purpose of the people expressed in the constitutional provisions under consideration.

It does not appear to us, and in our opinion it cannot be made to appear, that the accomplishment of the purposes of the people expressed in the provisions of section 2, art. 10, of the Constitution, through the means and agency of the Railroad Commission, will be either frustrated, hindered, disappointed, or defeated by adding to the jurisdiction of the Railroad Commission the new duties conferred by the Cox Law; and, in our view, there exists no occasion to imply a prohibition against the power of the Legislature to enact this law.

[7] In determining the constitutionality of statutes, great weight has always been given to contemporaneous interpretations of its provisions by the different departments of the government. This is illustrated by the construction given by the legislative branch of the government to the provisions dealing with legislative powers. While a legislative interpretation is not conclusive, yet it is entitled to great weight and should not be

departed from unless manifestly erroneous. The rule is stated in Ruling Case Law, vol. 6, § 60, that—

"Any exercise of power by the Legislature which for a long time has passed unchallenged, must be deemed to have been approved by the people unless forbidden by some subsequent constitutional provision."

This rule is announced in 12 Corpus Juris, p. 714, as follows:

"If the meaning of the Constitution is doubtful, a legislative construction will be given serious consideration by the courts, both as a matter of policy and also because it may be presumed to represent the true intent of the instrument. A contemporaneous legislative exposition of a constitutional provision is entitled to great deference, as it may well be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded, and the long-continued and unquestioned exercise of a given power by the Legislature is a weighty consideration in favor of the constitutionality of such exercise of authority, provided such enactments have been uniform. Where a state constitutional provision is susceptible of two constructions, the action of the Legislature in adopting one of those constructions, and in enacting a statute to carry it into effect as thus construed, is sometimes deemed conclusive."

Now, in the light of this doctrine, let us see how the Legislature of this state has interpreted the Constitution with reference to its authority to confer new duties on constitutional officers not traditionally associated with the office.

The office of Governor is without doubt a constitutional office, the duties of which are prescribed with great detail, and yet scarcely a session of the Legislature ever passes without new duties being conferred upon the Governor. The Governor is at this time a member of a number of permanent and temporary boards, among others the following: He is on the anti-tuberculosis commission; a member of the state bureau of child and animal protection; a member of the board of equalization of taxes for property in unorganized counties; a member of the state board of education; and a member of the board to calculate and fix the ad valorem tax rate. He was, within recent years, made a member of a temporary board to acquire land and build a new institute for the blind; also, was made a member of the board to negotiate with and sell to the United States government all property owned by the state and used for quarantine purposes.

The office of Lieutenant Governor is also without doubt a constitutional office whose duties are defined in the Constitution. The Legislature has repeatedly devolved additional duties upon the Lieutenant Governor by making him a member of various boards and bureaus.

One more instance is in point, and that is, that section 38 of article 16 of the Constitution provides:

"The Legislature may, at such time as the public interests may require, provide for the office of commissioner of insurance, statistics and history, whose term of office, duties and salary shall be prescribed by law."

Under this provision, the Legislature created the office of commissioner of insurance, statistics, and history, and conferred upon such officer the discharge of duties pertaining to the subjects named.

If the contention of appellant is correct, the Legislature was without authority to confer duties to be discharged by this officer, except as the duties conferred relate to the subjects of insurance, statistics, and history. The Legislature, however, did not so interpret the Constitution. In 1904 the people amended the Constitution (article 16, § 16), and provided for the incorporation of state banks and trust companies, and, among other things, the amendment contained the following provision:

"Shall provide for a system of state supervision, regulation and control of such bodies, etc."

The Twenty-Ninth Legislature passed an act providing for the incorporation of state banks and trust companies, as authorized by this amendment to the Constitution, and conferred on the commissioner of insurance, statistics, and history the duty of administering the law. See section 38, c. 10, Acts 1st Called Session 29th Legislature, p. 501.

By this continued practice of the Legislature in conferring upon constitutional officers duties not traditionally associated with the office, it evidences conclusively that the Legislature gave to the Constitution an interpretation in harmony with their customary procedure; that is, in harmony with the view that no restraints, either expressed or implied, existed in the Constitution against their action in these respects.

This doctrine is in harmony with the view stated in 29 Cyc. 1431. Speaking with reference to officers known to the common law, mention of which in the Constitution carries the authority usually conferred upon such officers at common law, the following is announced:

"Where mention is made of such officers in the Constitution, it has been held that they must acquire a constitutional right, of which the Legislature may not deprive them—although the Legislature is not prevented from conferring upon them and taking from them new powers which have not been traditionally associated with the office."

We see no reason to disturb the judgment heretofore rendered in this cause, and therefore overrule appellant's motion for rehearing.

Motion overruled.