## BURGESS et al. v. AMERICAN RIO GRANDE LAND & IRRIGATION CO. (No. 7766.)

Court of Civil Appeals of Texas. San Antonio. April 20, 1927.

Rehearing Denied May 18, 1927.

1. **Constitutional law** ⟨=62, 80(2)—Statutes providing for board of water engineers held not invalid as creating executive board with legislative and judicial powers (Rev. St. 1925, arts. 7560–7568; Const. art. 2, § 1, art. 3, § 1, and art. 5, § 1).

Rev. St. 1925, arts. 7560–7568, providing for board of water engineers, *held* not unconstitutional as violating Const. art. 2, § 1, art. 3, § 1, and art. 5, § 1, relative to powers of legislative, judicial, and executive departments of government on ground that such statutes clothe executive board with legislative and judicial powers.

2. **Constitutional law** ⟨= 298(3)—Waters and water courses ⟨=216—Statutes providing for board of water engineers held not unconstitutional as violating due process clauses (Rev. St. 1925, arts. 7560–7568; Const. Tex. art. 1, § 19; Const. U. S. Amend. 5).

Rev. St. 1925, arts. 7560–7568, providing for board of water engineers, *held* not unconstitutional as violating Const. Tex. art. 1, § 19, and Const. U. S. Amend. 5, providing for due process.

3. **Constitutional law** ⟨=40—Statute cannot be declared void for apparent injustice, want of public policy, or violation of fundamental principles of government.

No statute should be declared void because of apparent injustice or want of public policy, nor because it violates fundamental principles of government, since judiciary can only arrest execution of statute when it conflicts with Constitution.

4. **Constitutional law** ⟨=48—Statute must be shown invalid beyond reasonable doubt.

No statute should be declared void if there be reasonable doubt in judicial mind of its invalidity.

5. **Constitutional law** ⟨=60, 80(1)—Legislature cannot delegate power to make laws, nor clothe any agency except courts with judicial power.

Legislature cannot delegate power to make laws, nor clothe any other agencies of government with judicial power except courts.

6. **Constitutional law** ⟨=20—Legislative construction of Constitution should be considered in determining constitutionality of law.

When constitutionality of law is under investigation, legislative construction of Constitution should always be considered.

7. **Waters and water courses** ⟨=216—Legislature's power to establish water board is inherent without direct or special constitutional provision.

Legislature has authority to establish water board to administer certain laws, and such power would be inherent in Legislature without direct or special constitutional provision therefor.

8. **Constitutional law** ⟨=43(1)—Irrigation company recognizing board of water engineers' authority to make rates may be precluded from raising constitutional question as to rates.

Irrigation company, by recognizing right of board of water engineers to make rates for five years, may be precluded by such action from raising constitutional question as to such rates.

9. **Constitutional law** ⟨=26, 27—Federal Constitution should be strictly and state Constitutions liberally construed; federal being limited, and state being general.

Strict construction required in construing federal Constitution does not apply to construction of state Constitutions, which should be given liberal and broad construction, since national government is one of enumerated powers while governments of states are possessed of all general powers of legislation.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Suit by A. Burgess and others against the American Rio Grande Land & Irrigation Company. From a judgment of dismissal, plaintiffs appeal. Reversed and rendered.

Gause & Kirkpatrick, of Mercedes, for appellants.

D. W. Glasscock, of Mercedes, for appellee.

The Attorney General, amicus curiæ, for the State and board of water engineers.

FLY, C. J. A. Burgess, M. J. Clark, and Joe Hess, appellants herein, instituted this action against appellee to obtain a writ of injunction restraining it from the enforcement and collection of increased water rates arbitrarily fixed by it, and to restrain the collection of any water rates in excess of those fixed by the state board of water engineers and from refusing water for irrigation purposes to appellants. Appellee assailed the petition on ground of want of jurisdiction in the court and pleaded in abatement of the suit the unconstitutionality of the act creating the board of water engineers. The court, by agreement, heard the case on the plea in abatement and denied the injunction and dismissed the cause on the ground that articles 7560, 7561, 7562, 7563, 7564, 7565, 7566, 7567, and 7568 of Revised Civil Statutes of 1925, enacted by the Thirty-Fifth Legislature, are unconstitutional under the provisions of section 1, article 2, section 1, article 3, and section 1, article 5, Constitution of the state of Texas, and the Fifth Amendment to the Constitution of the United States

of America. The grounds stated in the judgment for such unconstitutionality are:

"In that it appears that said board of water engineers, and the members thereof, are of and belong to the executive department of the government of the state of Texas, and said statutes constitute and attempt to devolve upon said board and its members powers properly attached and belonging to the legislative and/or judicial departments of the government of the state of Texas; and including particularly the power to fix rates for the furnishing of water for irrigation purposes by corporations organized for irrigation purposes, which power is attached and belongs exclusively to such legislative department; and also including the power to hear, consider, and determine complaints and controversies, to hear evidence thereon, and to render decision in writing thereon, and to make and enter binding and enforceable orders and decrees, etc., all whereof are attached and belong exclusively to said judicial department; and, further, in that the application and enforcement of said statutes, as herein sought by plaintiffs, would deprive the defendants herein of their property, privileges and/or immunities contrary to the due course of the law of the land, and of their property without due process of law."

[1, 2] Section 1 of article 2 of the Constitution divides the powers of the state government into three departments (legislative, judicial, and executive), and provides that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Section 1 of article 3 provides for the legislative power being exercised by a Senate and House of Representatives. Section 1 of article 5 names the different courts of the state. Section 19 of article 1 is the due process provision, as is Amendment 5 to the federal Constitution. The foregoing are the provisions of the two Constitutions held by the trial judge to have been infringed by the passage of laws creating the board of water engineers, as contained in articles 7560 to 7568, inclusive, of the Revised Civil Statutes of 1925. The articles in question are assailed on the ground that they endeavor to clothe an executive board with legislative and judicial powers.

The statutes unconstitutional as stated in the plea in abatement are those stated in the judgment hereinbefore copied.

At times, in the proper exercise of its judicial duties, it becomes necessary for a court to pass upon the constitutionality of statutes, because the judiciary are sworn to execute the laws of the land, and no statute passed by a legislative body can become a law of the land unless passed by the authority and in consonance with constitutional requirements. Constitutions are the expression of the sovereign will of the people, and every law must be based thereon, or at least

not antagonistic thereto. As said by Judge Cooley:

"It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility. The legislative and judicial are co-ordinate departments of the government, of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other, without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it." Cooley, Const. Lim. p. 227.

[3] No statute should be declared void because of its apparent injustice or its want of public policy, nor yet because it may be thought a statute violates fundamental principles of government. "The judiciary can only arrest the execution of a statute when it conflicts with the Constitution." Cooley, Const. Lim. p. 236.

[4] No statute should be declared void if there be a reasonable doubt in the judicial mind of its invalidity, and the rule has been laid down, which we believe to be sound, that acts passed by Congress and Legislatures must be viewed from a different standpoint because Congress, under the Constitution of the United States, has its powers enumerated, but Legislatures are clothed with all general powers of legislation. As said in Sill v. Village of Corning, 15 N. Y. 297:

"The state, as to subjects of a domestic nature, is a sovereign political power, and the Legislature can provide such agencies for the administration of the law and the maintenance of public order as it shall judge suitable, where no prohibition, expressly made or necessarily implied, is found in the Constitution."

[5] The Legislature cannot delegate its power to make laws, nor can it clothe any other agency of government with judicial power except courts. That fundamental rule, however, must have some apparent, though not real, exceptions. The customs of the ages have given the Legislature the power to create agencies to carry out the legislative intent and administer details in matters conducing to the prosperity and usefulness which could not be administered, for obvious reasons, by the Legislature. To such agencies the Legislature does not delegate the power held by it alone to enact laws, but clothes them with the powers of administration of laws created by the Legislature. The act does not seek to give legislative powers to the board of water engineers, but merely created the board and defined its functions and duties. The board has no powers except those specially given by the

statute and those powers are clearly administrative or ministerial.  As said by this court, through Associate Justice Neill, in Gulf, C. & S. F. Railway v. State, 56 Tex. Civ. App. 353, 120 S. W. 1028, a case attacking the State Railroad Commission along the same lines followed in this suit in connection with the water board:

"It is, however, sometimes difficult to clearly define the line between a delegation of legislative power and a grant of authority to perform acts which are in their nature quasi legislative, but not strictly so.  The constitutional inhibition which prevents the delegation of legislative power does not prevent the grant of authority to make rules and regulations for the government of a particular subject."

There can be no doubt that the Legislature would have the right to fix rates and perform all the other labor committed by it to the water board, and undoubtedly it could create an agency to put into execution certain matters commanded by it.  If a Legislature has no power to create an agency to ascertain the amount of water to be furnished those entitled to it, and to fix reasonable rates for the same, then the whole irrigation system of the state falls to the ground, and the thousands of acres of rich lands in the semiarid portions will revert to their primitive state of unproductiveness, and many thousands of our people deprived of a means of livelihood.  It would be an impossibility for the Legislature, except through an agency, to perform the duties placed by it on the water board.  No question is more firmly settled than the power of the Legislature to create a Railroad Commission and invest it with greater powers than have ever been dreamed of in connection with a water board. That would be true in the absence of the constitutional provision authorizing the Legislature to provide agencies executing its power to regulate freight and passenger tariffs, correct abuses, and prevent discrimination and extortion.  Any one acquainted with the history of Texas when the question of regulating freight and passenger tariffs was under discussion will remember the bitter opposition to such power being exercised by the state, and one of the greatest political battles ever fought in Texas was over the question of the regulation of railroad companies and other corporations, proposed and advocated by Governor James S. Hogg.  The proponents of railroad regulation, in order to make that principle irrevocable, caused the submission of section 2, article 10, of the Constitution, and adopted it in 1890.  The execution of that provision was one of the main subjects of contention in the memorable campaign of 1892, when Governor Hogg triumphed over his enemies and the opponents of the restraint and regulation of corporations.  There is no room for doubt that a Railroad Commission could have been

created without the aid of an amendment to the Constitution, as the Interstate Commerce Commission was established without the aid of an amendment to the federal Constitution, and given power that the imagination of our forefathers could never have pictured. Those powers have been sustained by courts, state and federal, all over the Union, and are now seldom questioned.  Those powers are so extensive that state commissions have become sinecures and the influence of the federal commission is felt in every part of the Union and is exercised over almost every act of railroad companies, even to prescribing when they shall or shall not build a few miles of road, completely within the confines of a single state.  The extraordinary power and authority conferred on the Interstate Commerce Commission by the Congress of the United States have met with the approval of the court of last resort in the Union, although there is no direct, if indirect, sanction for such action in the federal Constitution, and the Fifth Amendment, or due process clause, of the Constitution has not been held to be invaded by the act.  How, then, could it be held that the creation of the water board is in conflict with that provision?

We have not had our attention called to any decision holding that the Legislature has not the power without direct authorization from the Constitution to appoint agencies to execute its will, but, on the other hand, the Supreme Court, in the case of Railroad Commission v. Railway Co., 90 Tex. 340, 38 S. W. 750, held:

"We have considered the matter as if the authority exercised by the Legislature must be derived from the Constitution, not intending to hold that it might not have been exercised independently of the provisions of article 10, section 2, of that instrument."

[6] That direct constitutional authority is not deemed necessary to lodge the power in the Legislature to create such agencies as a Railroad Commission is shown by the fact that the Railroad Commission has, without direct constitutional authority as given in the case of railroads, been given statutory authority over oil and gas pipe lines in Texas. Title 102, arts. 6004 to 6066, Rev. Civ. Stats. of 1925; City of Denison v. Gas Co. (Tex. Civ. App.) 257 S. W. 616.  By a law passed by the Fortieth Legislature (Acts 1927, c. 270), motor busses have been placed under the guidance and regulation of the Railroad Commission.  This indicates the legislative construction of the Constitution, which is always considered when the constitutionality of a law is under investigation.

[7] There can be no doubt that the Legislature has the authority to establish Railroad Commissions, water boards, or agencies by other names to administer the certain laws, which require such agencies to administer laws, and this power would be inherent in

the Legislature without direct or special constitutional provision therefor. In the case of Reagan v. Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014, the Supreme Court of the United States considered the Texas Railroad Commission, and in discussing it held:

"Passing from the question of jurisdiction to the act itself, there can be no doubt of the general power of a state to regulate the fares and freights which may be charged and received by railroad or other carriers, and that this regulation can be carried on by * * * a commission. Such a commission is merely an administrative board created by the state for carrying into effect the will of the state as expressed by its legislation. * * * No valid objection, therefore, can be made on account of the general features of this act; those by which the state has created the Railroad Commission and entrusted it with the duty of prescribing rates of fares and freights as well as other regulations for the management of the railroads of the state."

In other words, the Supreme Court upheld the power of the Legislature to create a commission to regulate rates and other affairs of railroad companies, without reference to any direct authority from the state Constitution. The decision is a complete answer to contentions of appellee which were upheld by the judgment of the lower court. In the cases known as the Railroad Commission Cases the same ruling was made in regard to the Railroad Commission of Mississippi. Stone v. Farmers' Loan & Trust Co., 116 U. S. 307 to 347, 6 S. Ct. 334, 388, 1191, 29 L. Ed. 636, and other cases. Every objection urged to the laws creating the board of water engineers has been urged to Railroad Commissions in state and federal courts and the statutes creating them invariably sustained. The Legislature has not delegated or surrendered any of its powers to the board of water engineers through the statutes held to be unconstitutional.

There is no merit in the contention that judicial functions have been conferred upon the water board. The contention of appellees is that the fixing of rates, and in considering possibly other matters, must be the exercise of functions given to the judiciary alone. That contention made in connection with state Railroad Commissions has been often considered and never sustained. In considering the rate-making power of the Railroad Commission of Kentucky, in the case of Louisville & N. Railway v. Garrett, 231 U. S. 307, 34 S. Ct. 51, 58 L. Ed. 229, the Supreme Court said:

"The contention is that, before the commission makes such an order, it is required to exercise judicial functions. It is first to determine whether the carrier has been exacting more than is just and reasonable; it is to give notice and a hearing; it is to 'hear such statements, arguments or evidence offered by the parties' as it may deem relevant; and it is in case it determines that the carrier is 'guilty of extortion' that it is to prescribe the just and reasonable rate. Still, the hearing and determination, viewed as prerequisite to the fixing of rates, are merely preliminary to the legislative act. To this act, the entire proceeding led; and it was this consequence which gave to the proceeding its distinctive character. Very properly, and it might be said, necessarily—even without the express command of the statute—would the commission ascertain whether the former, or existing, rate, was unreasonable before it fixed a different rate. And in such an inquiry, for the purpose of prescribing a rule for the future, there would be no invasion of the province of the judicial department. Even where it is essential to maintain strictly the distinction between the judicial and other branches of the government, it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers. The Legislature, had it seen fit, might have conducted similar inquiries through committees of its members, or specially constituted bodies, upon whose report as to the reasonableness of existing rates it would decide whether or not they were extortionate and whether other rates should be established, and it might have used methods like those of judicial tribunals in the endeavor to elicit the facts. It is 'the nature of the final act' that determines 'the nature of the previous inquiry.' "

The decision in the case of Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S. W. 301, we do not believe is in conflict with the decision of the Supreme Court of the United States from which we have quoted. In the Texas case, if we understand the decision, it is held that the water board cannot, under the Constitution, "decide the most intricate questions of law and of fact—questions with respect to the validity and superiority of land titles, questions of contract, questions of boundary, questions of limitations, and questions of prescriptions." We are not being confronted with any such questions in considering the different articles of the statute declared by the trial judge to be unconstitutional and void. It may with equal propriety be said of the water board, as was said by the Court of Civil Appeals of the Fifth Supreme judicial district, in passing upon the law placing the oil and gas interests under control of the Railroad Commission, in City of Denison v. Municipal Gas Co., 257 S. W. 616. The court said:

"The act is not unconstitutional on the ground that it undertakes to deprive courts of constitutional duties conferred upon them and to empower a nonjudicial body to exercise such judicial duties. The fixing of rates and regulating gas utilities in the manner provided by the terms of the statute is not a judicial function, and is therefore not an invasion by the Legislature of the judicial branch of government."

It is true that a writ of error was granted in the case on February 13, 1924, but it was not granted on any ground enumerated in the statute but the notation on the application, for the writ is, "Granted, on account of the importance of the questions." That occurred three years ago, and we have seen no decision in the case.

The exhaustive opinion of the Supreme Court on riparian rights in Motl v. Boyd, 286 S. W. 458, seems to uphold the irrigation laws of Texas, at least as to the articles under consideration at this time, because it says:

"The statutes involved in the present case are mere administrative statutes, by which a license is granted or refused, and nothing adjudicated."

[8] In conclusion, it may be said that the irrigation company appears in no favorable light in insisting that the board of water engineers has no constitutional right to make rates for water when it has been recognizing its right to do so for five years. This court has held that such action precludes appellee from raising the constitutional question as to rates. Kohler v. Irrigation Co. (Tex. Civ. App.) 222 S. W. 337.

In conclusion, we copy as peculiarly applicable to this case the language of Judge Dibrell, in Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322, in regard to the irrigation laws:

"The act under investigation is a public grant for public advantage, seeking to reclaim a vast portion of our state from barrenness and nonproductiveness and to enhance the value of the public school lands situated in the arid and semiarid districts by subjecting them to the magic of irrigation, and being a public grant for public advantage must be liberally construed."

[9] That was said in regard to a grant to a corporation, and with how much more force does it apply to an agency of the state, created to control and supervise the placing of water on rich acres of Texas that are crying out for it, and returning food and comfort therefor to thousands of citizens. No narrow contracted view of the state Constitution should impede the onward progress of the state or set back the hands of the clock of progress to the uncontrolled, unhampered days of the chaparral and coyote. No such rigid rules of construction should be applied to a state Constitution as are or should be applied to the federal Constitution. As said by Judge Cooley, Constitutional Limitations, p. 242:

"The government of the United States is one of enumerated powers; the governments of the states are possessed of all the general powers of legislation."

Strict construction should be given in the one case, liberal and broad construction in the other.

The bill sets up a meritorious cause in equity, and the judgment will be reversed and here rendered granting the injunction prayed for.