## RAILROAD COMMISSION OF TEXAS v. BASS.  (No. 6832.)

Court of Civil Appeals of Texas.  Austin.
June 27, 1928.

On Rehearing, Nov. 14, 1928.

W. A. Keeling, former Atty. Gen., Frank M. Kemp, former Asst. Atty. Gen., Claude Pollard, Atty. Gen., and Joe S. Brown, Asst. Atty. Gen., for appellant.

. Bailey, Nickels & Bailey, of Dallas, and Geo. Mendell, Jr., of Austin, for appellee.

McCLENDON, C. J.  Appeal from a final judgment awarding appellee (plaintiff below) a permanent injunction restraining the Railroad Commission, its members, agents, employees, and representatives from enforcing "Oil and Gas Conservation Rule No. 37" against appellee with respect to 3½ acres of land, and from instituting any suits to collect penalties for the violation of that rule in respect to that land.  The parties will be designated as in the court below.

.· Plaintiff questioned the constitutionality of the statute (chapter 155, General Laws of 1919), under which rule 37 was promulgated, conferring upon the Railroad Commission

regulatory power with reference to mining oil and gas. Prior to the submission of the case, the Dallas court, in City of Denison v. Municipal Gas Co., 257 S. W. 616, had decided this constitutional question, upholding the power of the Legislature to confer similar powers upon the Railroad Commission. That case being before the Supreme Court on writ of error granted, we held the case at bar under submission pending the Supreme Court's decision, which has now been rendered, upholding the Dallas court. 3 S.W. (2d) 795.

The trial court held rule 37 void and unenforceable on two grounds: First, because it did not come within the powers delegated by the Legislature to the Railroad Commission; and, second, because, as applied to the land in question, it was unreasonable.

■ Subsequently to the filing of this suit, the owners of the leasehold interest in the land in question brought suit in the federal court at Dallas, seeking damages from the members of the Railroad Commission and an oil company holding leases on adjacent property, alleging that the application of the rule to the land in question had resulted in great injury to them as owners of the mineral lease. In that case the constitutionality of the act of 1919 and the reasonableness of rule 37 were brought in question. The federal District Court [Oxford Oil Co. v. Atlantic Oil & Producing Co., 16 F.(2) 639] and the Circuit Court of Appeals of the Fifth Circuit [Id., 22 F.(2d) 597] held the act constitutional and the rule reasonable and enforceable. The Supreme Court of the United States denied an application for a writ of certiorari. 48 S. Ct. 433, 72 L. Ed. ——. We overrule the decision of the trial court in so far as it holds the rule not within the legislative grant, or unreasonable generally, upon the authority of the cited decisions of the federal courts.

In the opinion by the Circuit Court of Appeals we read:

"Plaintiffs do not complain of any arbitrary exercise of power, but merely that the Railroad Commission was without authority to adopt or enforce any rule."

It is manifest, therefore, that the reasonableness of the rule as applied to the tract of land in question was not adjudicated in the federal court, and our inquiry will be directed solely to that question.

Other than the expert testimony which will be dealt with later, the controlling facts are undisputed, and follow:

Plaintiff is part owner of an oil and gas lease covering a strip of land 56.7 feet wide at the north end, 35.9 feet wide at the south end, and 3,190 feet long. The Atlantic Oil Company holds mineral lease covering land west of the strip, and the Humble Oil Refining Company, Gulf Production Company, and Skelly Oil Company hold leases covering

the lands to the east of the strip. These lands were all in proven territory and in what was known as the Powell field, which was some 6 miles long and about one mile wide. The north end of plaintiff's tract was near the middle of the field and the south end near its southern extremity. The Atlantic Company had obtained permission from the Railroad Commission to drill ten wells each 150 feet from plaintiff's west line; the north well being 150 feet from the north line and the others 300 feet apart. Like permission had been granted the Humble, Gulf, and Skelly Companies to drill ten wells. These were located approximately 150 feet east of plaintiff's west line and spaced about the same as those of the Atlantic Company. It seems that, when permission was granted to drill these wells, the owners of the leases were claiming plaintiff's strip, and consequently the west line of plaintiff's land was assumed to be west property line of the leasehold interests on the east. Plaintiff applied to the commission for permission to drill ten wells along the center of the strip, the first to be 150 feet from the north line and the others 300 feet apart. This permission was refused, and plaintiff was first given permission to drill two wells, one near the center and one towards the south end of the strip; and later he was given permission to drill two others wells, one 150 feet from the north line and the other near the center. These four wells were spaced, beginning at the north line as follows: The first 150 feet; the second 1,063, or 913 from the first; the third 1,220, or 157 feet from the second; and the fourth 2,126, or 906 feet from the third.

Rule 37 reads:

"No well for oil or gas shall hereafter be drilled nearer than three hundred (300) feet to any other completed or drilling well on the same or adjoining tract or farm; and no well shall be drilled nearer than one hundred and fifty (150) feet to any property line; provided that the Commission, in order to prevent waste or to protect vested rights, will grant exceptions permitting drilling within shorter distances than as above prescribed, upon application filed fully stating the facts, notice thereof having first been given to all adjacent lessees affected thereby. Rule 37 shall not for the present be enforced within the proven oil fields of the Gulf Coast."

This rule has a conservation basis, and was promulgated for two purposes, one to reduce the fire hazard, and the other to minimize the danger of water percolation into the oil stratum from wells drilled in too great a number, or in too close proximity. The witnesses agree that some regulation of this character is essential, and that the rule itself is based upon practical experience in the development of the oil and gas mining industry. It was shown that in sand of the character of the stratum in this field a well will

drain approximately 10 acres, or 660 feet square. The rule in question permits the drilling of a well upon every 300 feet square, and prohibits the owner from drilling within 150 feet of his property line. Manifestly the rule, if strictly applied to the strip in question, would prevent any drilling because of the narrow width of the strip, as no well could be put as far as 150 feet from the east and west lines. The rule, however, reserves in the commission the right, "in order to prevent waste or *to protect vested rights*," to make exceptions to fit particular situations, and grant permission to drill wells in closer proximity than the rule prescribes generally, and this the commission has done in this case.

■■ The theory of plaintiff appears to be that he had a right as matter of law to drill an offset well to each of the authorized wells adjacent to his east and west property lines. From the mass of expert testimony in the record, it appears that the right to drill offset wells is generally recognized in this character of mining. This right, however, contemplates that the common property line between adjoining leaseholds shall bisect the distance between offset wells, giving to each the same chance at draining beyond the property line of its owner. Theoretically, and so far as experience has been able to determine, practically, each of two offset wells will drain to a point midway between the two. Since the wells of the Atlantic Company were located 150 feet from plaintiff's west line, and the wells to the east were from 94 to 114 feet east of plaintiff's east line, whereas plaintiff's wells must of necessity be within from 28 to 18 feet of these property lines, it is manifest that to permit plaintiff to drill an offset well to each of the ten pair of wells authorized on the east and west sides of his tract would give him an unfair advantage over the owners of adjacent lands, unless the latter were in turn permitted to drill offset wells the same distance from the division line as plaintiff's. This, however, would result in placing 30 wells in much closer proximity to each other than rule 37 authorizes, and would create quite a congested field. It could be justified only in case the commission had granted plaintiff's application, in which event, under plaintiff's own theory, the adjoining owners would be entitled to demand, and no doubt would have been given permission to drill, offset wells the same distance from the property line as plaintiff's.

■■ Conceding generally the right to drill offset wells, we think that, where the boundaries of a tract are so delineated as to require, in the interest of the general purposes of rule 37, an exception to or limitation upon that right, the commission has the power to enforce such exception or limitation, provided always its order is just, fair, and reasonable. We also think the proper test of reasonableness to be whether, taking into consideration the area and outline of plaintiff's land, its general location, and the location of all its parts to the proven field, and the relative distances to the common property line of plaintiff's authorized wells and those authorized on adjoining tracts, the plaintiff would have an equal opportunity with adjoining leaseholders of developing and realizing for his leasehold.

■ The Railroad Commission having already authorized the ten wells on the west and ten on the east at distances from the common property lines considerably greater than one-half the width of the strip, the reasonableness of limiting plaintiff to a less number than an offset well to each of these adjacent wells depends upon whether, considering the above-enumerated factors, the permission granted would give him approximately the same opportunity to extract oil from the field that he would have if the offset theory had been applied equally both as to number and distance between plaintiff and adjacent owners. The evidence clearly shows that the order of the Railroad Commission was fair and just to plaintiff from this viewpoint. The commission was charged with the duty of administering the conservation act and at the same time was required in administering it to recognize the vested rights of owners. There is abundant evidence in the record to show that it acted fairly and justly in this case, and that, considering the acreage owned by plaintiff, its unusual shape, and its relation to the oil field, plaintiff has been accorded ample opportunity in the four wells authorized to be drilled by him to extract as much oil from the field as he could reasonably be expected to under any fair application of the offset well principle. The commission is an administrative body, and its orders and rulings must be upheld unless they are clearly shown to be unreasonable or unjust. The record as we view it wholly fails to show any unfairness, unjustness, or unreasonableness in the application of the rule, and the commission's orders thereunder, to plaintiff's rights.

The judgment of the trial court is therefore reversed, and judgment is here rendered in favor of appellants, dissolving the injunction granted by the trial court, and denying to appellee any of the relief sought.

Reversed and rendered.

### On Motion for Rehearing.

Appellee, in his motion for rehearing, points out certain inaccuracies in our original opinion which we now correct:

1. There was in fact no permit issued by the Railroad Commission to the Atlantic Oil Company on the west or the several companies on the east of appellee's land. The procedure seems to be that, where rule 37 is complied with, no permit to drill is necessary. It is only where the owner desires an

exception to rule 37 that application is made to the commission. The wells of the Atlantic Company were drilled in strict accordance with rule 37. The wells of the companies holding leaseholds to the east of appellee's land were drilled in attempted accordance with rule 37, under the mistaken assumption that the west line of those holdings was coincident with the east line of the Atlantic holdings. In view of the fact that these wells were drilled in good faith under these circumstances, no action was taken by the Railroad Commission for violation of rule 37.

2. Our statement that appellees were first given permission to drill two wells and later two additional wells was based upon our construction of the second order, which provided that it was amendatory of the first order. Our attention is called to the fact that this matter is cleared up in the pleadings of the Railroad Commission which show that the second order was merely intended to relocate the two wells permitted under the first order. To correct this error, we now find that under the two orders appellee was granted permission to drill two wells 150 feet and 1,220 feet, respectively, from the north line.

Appellee contends that under this corrected statement of the record we should affirm the trial court's holding that the order was unreasonable as applied to appellee's land. We do not concur in this contention. The first order authorized one well near the center of the tract and the other near its south end. The evidence shows that a well at the latter location would have been of no value and would not have been drilled. The lease was most valuable at the northern end of the tract and the value decreased toward the south. The case was manifestly tried upon the theory of the sufficiency of the two wells authorized in the second order of the commission to meet the test of reasonableness. We find that the two wells in the second order, placed as they were, met the same condition as to fairness, justness, and reasonableness which in our original opinion we found with reference to the four wells under our original construction of the two orders.

With the above corrections in the statement in our original opinion, the motion for rehearing is overruled.

Original opinion corrected. Motion overruled.